173 N.J. Super. 397 (1979)
414 A.2d 559
TOWNSHIP OF LITTLE FALLS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
DAVID J. BARDIN, COMMISSIONER OF THE STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, ET AL., RESPONDENTS. TOWNSHIP OF LITTLE FALLS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
BOARD OF PUBLIC UTILITY COMMISSIONERS AND CARRINO CONTRACTING & TRUCKING CO., INC., RESPONDENTS. CARRINO CONTRACTING & TRUCKING CO., INC., ETC., PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF LITTLE FALLS ET AL., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 1979.
Decided September 27, 1979.
*401 Before Judges MATTHEWS, ARD and POLOW.
James V. Segreto argued the cause for appellant Township of Little Falls.
John J. Degnan, Attorney General, filed a Joint Statement in Lieu of Brief on behalf of respondent Department of Environmental Protection and respondent Board of Public Utility Commissioners (A-3280-74; A-28-75) (John M. Van Dalen and Carla V. Bello, Deputy Attorneys General, of counsel).
Nathan M. Edelstein, Deputy Attorney General, argued the cause for amicus curiae, Commissioner of New Jersey Department of Environmental Protection (A-4241-77) (John J. Degnan, Attorney General, attorney; Stephen Skillman, Assistant Attorney General, of counsel).
Robert S. Moraff argued the cause for respondent Carrino Contracting & Trucking Co. (A-4241-77) (Marcus, Fiorello & Moraff, attorneys).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
This appeal consolidates three appeals, each of which arose from the same basic dispute. Appellant Township of Little Falls (township) appeals from the decision of the New Jersey Department of Environmental Protection (DEP) granting the application of respondent Carrino Contracting & Trucking Co., *402 Inc. (Carrino) for registration of a solid waste disposal facility. The township also appeals from the decision of the Board of Public Utility Commissioners (PUC) granting Carrino's application for a certificate of public convenience and necessity. The third appeal is taken by the township from a final judgment of the Chancery Division declaring Little Falls Ordinance 375 and the township's zoning ordinance invalid, and holding the agreement between Montclair State College and plaintiff Carrino valid.
Carrino, as the successful bidder for the operation of a regulated sanitary landfill project at Montclair State College, was required to secure the necessary approvals from DEP and PUC. Consequently, Carrino submitted an application for registration to the Bureau of Solid Waste Management of DEP. On March 10, 1975 DEP issued a sanitary landfill registration to Carrino. On March 20, 1975 the township wrote to the Commissioner requesting a review of the Department's action and an administrative hearing. DEP's response was to deny the request for a hearing. On June 13, 1975 the township filed a notice of appeal from the issuance of the registration.
On March 31, 1975 Carrino submitted an application to PUC for a certificate of public convenience and necessity. PUC conducted a hearing on May 19, 1975 and on August 25, 1975 the certificate was issued. A notice of appeal was filed by the township on September 2, 1975. On January 5, 1976 this court granted a motion to remand the matter for a supplemental hearing. The hearing examiner recommended affirmation of the prior determination by PUC and an order in accord therewith was entered on October 19, 1978.
The final proceeding at issue herein is the hearing before the Chancery Division which began on September 3, 1975. Carrino had initiated an action against the township seeking an injunctive order restraining the township from interfering with its contract and seeking an adjudication holding the township's Ordinance 375 and its zoning ordinance invalid. The township's *403 zoning ordinance precludes the operation of a sanitary landfill within the geographical boundaries of the township. The trial judge found the section of the zoning ordinance establishing sanitary landfills a nonpermitted use invalid as applied to the Carrino operation, and the agreement between Montclair State College and Carrino valid. On June 21, 1978 the township filed a notice of appeal from that judgment.
During 1971-1972 Montclair State College acquired a parcel of land adjacent to its then existing campus facilities. The site in question was a worked-out and abandoned quarry.
The college, after considerable study and advice form consultants, decided to convert the quarry into an athletic field. The conversion or reclaiming was to be accomplished through the method of a regulated sanitary landfill operation of limited duration. The actual landfilling operation was to take 18 months.
As a result of the college's plan, it publicly advertised for bids from persons interested in undertaking the project. Respondent Carrino was awarded the contract.

I
In Little Falls Tp. v. Bardin (A-3280-74), appellant urges that the "Department of Environmental Protection improperly denied the township's request for a hearing."
As noted, Carrino submitted an application for registration to the Bureau of Solid Waste Management of DEP. On January 27, 1975 the township wrote a letter to DEP acknowledging its awareness of the pending application and requesting that it be informed of the status of the matter. The township also requested a copy of the application and design and, further, asked that it be given notice of future conferences in order that the township might participate. The township did not request a hearing. In response to the township's letter, DEP indicated in its letter of January 28, 1975 that although it did not have the facilities for reproducing engineering designs, they were available *404 for inspection and DEP would welcome comments from the municipality as to whether the proposed operation would comply with the rules of the Bureau of Solid Waste Management. The township asserts that it subsequently contacted DEP and requested a hearing to examine the engineers. However, it offers no proof that such contact was made and respondent Carrino insists that appellant ignored DEP's request for comments.
On March 10, 1975 DEP issued a registration of solid waste disposal and/or processing facility to the applicant, conditioned upon compliance with eight specific requirements. By letter of March 20, 1975 the township requested that DEP review its decision and it also requested an administrative hearing. On May 6, 1975 the township's request for a hearing was denied in a letter from Assistant Commissioner Ricci in which he detailed the basis for DEP's action.
The township argues that a hearing was required by the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq. Section 52:14B-9(a) provides that "[i]n a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice." A contested case is defined in N.J.S.A. 52:14B-2(b) as
* * * a proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing.
This argument was presented and considered in In re Modern Indust. Waste Service, 153 N.J. Super. 232 (App.Div. 1977), which presented an analogous situation. There, DEP granted a certificate of registration to Modern for the operation of a solid waste transfer station and the township appealed, contending, among other things, that it had a right to a hearing under the Administrative Procedure Act, specifically N.J.S.A. 52:14B-9(a). We concluded that the act does not create a substantive right to a hearing, but merely details the procedure to be followed where a *405 hearing is otherwise required by statutory law or constitutional mandate. See Public Interest Research Group v. State, 152 N.J. Super. 191, 205 (App.Div. 1977), certif. den. 75 N.J. 538 (1977); In re Environmental Protection Dep't., 139 N.J. Super. 514 (App.Div. 1976).
The township argues initially that a hearing was required by the provisions of N.J.A.C. 7:26-5.4(p), which provides:
In addition to any hearing mandated by the New Jersey Solid Waste Management Act (N.J.S.A. 13:1E-1 et seq.), any person aggrieved by any of the following actions of the Bureau of Solid Waste Management may, upon application made within 15 days after notice of the action be entitled to a hearing before the Department.
1. Denial of a rebate of a penalty paid pursuant to N.J.S.A. 13:1E-9;
2. Intent to deny a registration application;
3. Refusal to renew a registration application when renewal application has been timely made.
4. Approval with conditions of a registration application.
The township alleges that it is a "person aggrieved" by the approval of the application and, therefore, under subparagraph 4, is entitled to a hearing.
The foregoing regulation was considered by us in Modern, above, 153 N.J. Super. at 237. However, we found it unnecessary to decide whether the township there was an aggrieved person within the provisions of the regulation since the township had failed to comply with the time limit imposed by the section.
Respondent Carrino argues that the language of N.J.A.C. 7:26-5.4 indicates that the provision is intended to confer rights on the applicant or other direct party in interest who may be aggrieved. We agree. The first subparagraph refers to a denial of a rebate, the second refers to denial of a registration application, the third concerns a refusal to renew a registration application. The section was clearly designed to provide a *406 registrant or applicant some recourse after an adverse decision by the Bureau. Subparagraph 4 is consistent with this scheme. It refers to approval with conditions. Again, the imposition of conditions is a matter which might give rise to objections by the registrant. Thus, it appears that the regulation is intended to safeguard the interests of the applicant or registrant and, as such, appellant herein is not a "person aggrieved" within the intendment of the provisions.
Appellant also argues that a hearing is required by reason of the fact that the issuance of a solid waste registration pursuant to N.J.S.A. 13:1E-5 involves the exercise of discretion by DEP as to whether an applicant meets the criteria set forth. The township contends that since this requires the exercise of a quasi-judicial function by an administrative agency, the requirement of notice and a hearing may be implied in the absence of a specific statutory provision.
A similar argument presented in Modern, cited above, was based on the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution and Art. I, par. 1 of the N.J. Constitution. Quoting from Handlon v. Belleville, 4 N.J. 99, 105 (1950), we set forth the factors necessary to constitute a quasi-judicial function requiring a hearing:
The quality of the act rather than the character of the agency exercising the authority is determinative of the nature of the power and the need for procedural due process. Where the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thereby exercising a discretion or judgment judicial in nature on evidentiary facts, the function is ordinarily quasi-judicial and not ministerial. The classification depends upon the nature of the act and the controls placed upon the exercise of the power in the legislative grant. [153 N.J. Super. at 239]
We there pointed out that the township lacked sufficient property interests to invoke due process principles of constitutional protection. Further, we concluded that the issuance of a certificate *407 of registration is legislative in nature and, therefore, a hearing was not required. That holding is dispositive of the issue raised here. The action of DEP was legislative rather than quasi-judicial and, thus, the requirements of notice and a hearing are not required in the absence of a statutory provision.
Having concluded that a hearing was not mandated by N.J.A.C. 7:26-5.4(p) nor impliedly required by N.J.S.A. 13:1E-5, the proceeding below was not a contested matter within the provisions of the Administrative Procedure Act, and therefore, the township was properly denied a hearing.
Nor do the cases upon which the township relies provide support for its position. Juzek v. Hackensack Water Co., 48 N.J. 302 (1966), and In re Borough of Peapack-Gladstone, 11 N.J. Super. 498 (App.Div. 1951), both involved administrative action directly affecting substantial property rights of the parties. Both Jersey City v. Civil Service Dep't., 57 N.J. Super. 13 (App. Div. 1959), and In re Plainfield Union Water Co., 11 N.J. 382 (1953), dealt with administrative action which was decidedly quasi-judicial in nature. Thus, the right to a hearing in those cases depended upon factors notably absent in the present case.

II
In Little Falls Tp. v. Board of Public Utility Comm'rs, (A-28-75), appellant urges three issues: (1) an applicant for a PUC certificate of public convenience and necessity must have moral integrity; (2) sufficient facts relating to the issue of moral integrity were brought to the attention of the PUC to have required it to investigate the relationship of Carrino to New York Carting, and (3) the hearing officer improperly prevented cross-examination of Carrino as to his financial responsibility.
As heretofore indicated, Carrino was issued a certificate of public convenience and necessity on August 25, 1975. Appellant's argument here is based on what the township alleges is a *408 discrepancy between Carrino's testimony before PUC at the hearing of May 19, 1975 and his deposition testimony of October 24, 1975.
During the hearing of May 19, 1975 there was testimony and documentary evidence pertaining to a circular distributed by an entity known as New York Carting and/or its subsidiary, National Recycling Industries. The circular apparently indicated that New York Carting was the New York agent for Carrino. At the hearing Carrino testified that he had not made any contract with New York Carting although he was aware of the firm and also knew of National Recycling's relationship to it. However, he denied that he authorized the issuance of the circular.
During his deposition testimony on October 24, 1975 Carrino acknowledged that on September 2, 1975 New York Carting was his customer and on that date the company did make a delivery to the landfill site.
The supplemental hearing before PUC took place on March 24, 1976. At that time Carrino testified that his prior testimony before PUC on May 19, 1975, as well as his deposition testimony, was truthful. He stated that he had not entered into the agreement with New York Carting until May 30, 1975. Apparently, certain principals of New York Carting were the subject of a criminal indictment in New York State.
The township argues that although neither the Solid Waste Utility Control Act, N.J.S.A. 48:13A-1 et seq., nor the rules promulgated pursuant thereto, in particular N.J.A.C. 14:3-10.5, expressly refers to moral integrity, it is a factor relevant to the issue of qualification. Therefore, the township contends that the facts recited above concerning Carrino's testimony were sufficient to require an investigation by PUC.
The qualification required for the issuance of a certificate of public convenience are set forth in N.J.S.A. 48:13A-6:

*409 No person shall engage, or be permitted to engage, in the business of solid waste collection or solid waste disposal until found by the board to be qualified by experience, training or education to engage in such business, is able to furnish proof of financial responsibility, and holds a certificate of public convenience and necessity issued by the Board of Public Utility Commissioners. No certificate shall be issued for solid waste collection or solid waste disposal until the proposed collection or disposal system has been registered with and approved by the State Department of Environmental Protection as provided by law.
N.J.A.C. 14:3-10.5 requires that an applicant furnish, among other things, "a statement of his experience, training or education in the solid waste collection and/or solid waste disposal industry together with all supporting data in order to enable the Board to determine his qualifications to engage in such business" (subpar. 2), as well as "such other information as the Board may deem necessary for its determination of the qualifications of the applicant to engage in the business of solid waste collection and/or disposal" (subpar. 6).
The township relies on Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972), to support its position that the foregoing statute and regulation must embrace the concept of moral integrity. Trap Rock involved the suspension of government contractors from a list of responsible bidders on the ground that indictments had been returned charging criminal offenses. In holding that the suspension was not unreasonable, the court emphasized that the legislative mandate that a bidder be "responsible" embraces moral integrity as well as a capacity to supply labor and materials. The court in Interstate Waste Removal Co. v. Bordentown, 140 N.J. Super. 65, 71-72 (App.Div. 1976), acknowledged this principle again in a bidding situation, but rejected it on the facts presented.
The difficulty in applying the reasoning of Trap Rock (cited above) to the present matter is that here the contract has already been awarded to Carrino by Montclair State College. *410 PUC approval is a type of condition subsequent to the award of the contract. Trap Rock refers to the "risk of collusive bidding" and bribery. 59 N.J. at 482. Neither appears to be a danger here.
In any event, even if we assume that Carrino's moral integrity is properly at issue, the township has failed to present proof discrediting his character. First, the allegation that Carrino lied at the May 19, 1975 hearing concerning the existence of a contract with New York Carting was explained at the supplemental hearing where Carrino indicated that the contract was not entered into until May 30, 1975. Thus, the hearing officer found no basis for concluding that he had testified falsely at the original hearing. His findings were supported by sufficient credible evidence in the record. Furthermore, we are inclined to agree with Carrino's contention that the facts merely established a customer type of relationship with New York Carting and/or National Recycling Industries. We fail to see how the indictment of respondent's client reflects adversely on his own moral integrity.
Finally, appellant asserts that it was improperly prevented from cross-examining Carrino as to his financial responsibility. The simple answer to this argument is found in N.J.A.C. 14:3-10.6(a), which provides:
Upon receipt of an application, the Board may process the application with or without public hearings to determine whether a certificate shall be issued to the applicant; however, no order of denial shall be entered until applicants are offered a hearing with regard thereto. [Emphasis supplied]
We conclude that the township was properly denied the right to cross-examine Carrino. In re Appeal for Certif. of Pub. Convenience, 134 N.J. Super. 500, 505 (App.Div. 1975).

III
In Carrino Contracting and Trucking Co., Inc. v. Little Falls Tp. (A-4241-77), defendant argues (1) municipalities are required *411 to conduct a solid and liquid waste program based upon a local ordinance providing standards at least equivalent to the current edition of the Solid Waste Code of New Jersey, and (2) municipalities have zoning jurisdiction over solid waste facilities by reason of the provisions of the State Land Use Act.
Defendant argues that municipalities, by virtue of the Local Health Services Act, N.J.S.A. 26:3A2-1 et seq., have concurrent jurisdiction, along with DEP and PUC, in the field of solid waste disposal. Pursuant to its authority under N.J.S.A. 26:1A-15, the Public Health Council promulgated rules setting forth recognized public health activities and minimum standards of performance for local health departments. Those rules were subsequently revised after the enactment of the Local Health Services Act. Under N.J.A.C. 8:51-1.1 those activities which are classified as "core activities" are mandatory. Solid waste disposal is designated as a core activity. N.J.A.C. 8:51-3.11 provides, in pertinent part:
(a) The core activity is to control the storage, collection and disposal of solid and liquid refuse.
(b) Standards include the following:
1. Conduct a solid and liquid waste program based upon:
i. Local ordinance providing standards at least equivalent to the current edition of the "Solid Waste Code of New Jersey";
ii. Public Health Nuisance Act, Chapter 188, P.L. 1950 (N.J.S.A. 26:3-69.1.6);
iii. N.J.A.C. 7:26-1.1 et seq.;
iv. Solid Waste Management Act 1970, N.J.S.A. 13:1E-1 et seq.
From the foregoing, defendant concludes that municipalities are required to control solid waste and to adopt an ordinance with standards at least equivalent to the state standards.
In Pleasure Bay Apts. v. Long Branch, 66 N.J. 79 (1974), the court traced the history of solid waste disposal regulation. Prior *412 to 1970 such regulation was left largely to municipalities and local boards of health. With the enactment of the Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq., and the Solid Waste Utility Control Act, N.J.S.A. 48:13A-1 et seq., in 1970, the State was given more direct controls. Those statutes were interpreted in Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348 (1971), to have preempted the field of solid waste disposal. The court recognized that the acts reflected a comprehensive plan on the part of the State to control all facets of the industry. Consequently, the court invalidated the municipal ordinance which sought to regulate sanitary landfills. The Legislature responded to the Ringlieb decision in 1971 by enacting a supplement to the Solid Waste Management Act, specifically N.J.S.A. 13:1E-17, which returned to local authorities some limited control over landfill operations. Section 17 was repealed in 1975. Defendant concedes that absent any further legislation, the foregoing outline suggests an intent on the part of the Legislature to preempt the field. Nevertheless, the township argues that the subsequent enactment of the Local Health Services Act in 1975 again returned some local authority over the landfill industry.
Recently, in Garden State Farms, Inc. v. Bay, 77 N.J. 439, 450 (1978), the factors to be considered in determining the preemption issue were reviewed. Matters which reflect a need for uniformity, i.e., those inherently in need of statewide treatment, are not proper subjects for local regulation, Overlook Terrace Mgmt. v. West New York Rent Control Bd., 71 N.J. 451, 461-462 (1976). Further, where the legislative enactment, either expressly or impliedly, is intended to be exclusive in the field, it will be deemed preempted. However, because of a policy favoring a liberal construction of statutes in favor of local authority, the intent to occupy the field must clearly appear. Summer v. Teaneck, 53 N.J. 548, 554-555 (1969). A third consideration is whether the state scheme is so pervasive or comprehensive that it effectively precludes co-existence of the *413 municipal regulation. Ringlieb, cited above, 59 N.J. 348 (1971). In addition, a legislative intent to preempt will be found where the local regulation conflicts with the state statute or where it stands as an obstacle to the accomplishment of the objectives of the Legislature. Garden State Farms, above, 77 N.J. at 450; Overlook Terrace Mgmt. above, 71 N.J. at 462.
Analysis of the instant case in light of the foregoing principles suggests a finding of preemption. The need for statewide treatment of this subject matter is reflected in the legislative findings and declaration of policy in the Solid Waste Management Act. Subsection (a) of N.J.S.A. 13:1E-2 states:
The Legislature finds that the collection, disposal and utilization of solid waste is a matter of grave concern to all citizens and is an activity thoroughly affected with the public interest; that the health, safety and welfare of the people of this State require efficient and reasonable solid waste collection and disposal service or efficient utilization of such waste; that the management of solid waste in New Jersey consists largely of piecemeal, uncoordinated activities developed to meet the immediate needs of local governments with little, if any, regard for regional planning and coordination; that local units of government acting on their own despite the most dedicated and sincere efforts, lack the financial resources, scope of alternatives and expertise to plan, develop and implement efficient and effective solutions to their solid waste problems; and that for the most part, the solid waste planning and management process is adversely affected by the absence of area-wide structures, the limitations of local initiative, the general inadequacy of State technical assistance, the paucity of State grants for solid waste experimentation, the failure of the State to establish guidelines for the preparation of county and intercounty plans, and the failure to implement county and intercounty solid waste collection, disposal and utilization operations. [Emphasis supplied]
Thus, the Legislature provided in subsection (b) that it is the policy of this State to "establish a statutory framework within which all solid waste collection, disposal and utilization activity in this State may be coordinated." In addition, subparagraph (2) provides for solid waste management districts to develop and implement a comprehensive solid waste management plan to *414 meet the needs of every municipality within the district. The requirement of public hearings prior to adoption of such plans allows municipalities the opportunity to contribute. N.J.S.A. 13:1E-2(b)(3), N.J.S.A. 13:1E-23(c).
The court in South Ocean Landfill v. Ocean Tp., 64 N.J. 190 (1974), also recognized the need for statewide regulation. That case limited the scope of N.J.S.A. 13:1E-17 (since repealed). There it was observed that
No statewide plan for solid waste management has been shown and we assume none exists. We have noted reports in the public press that proposed regulations have been drafted by the Department of Environmental Protection and public hearings have been held thereon. However, it is essential that a statewide master plan be prepared forthwith and regionalization of facilities undertaken. [at 195-196]
Ringlieb also expressed an awareness of the need for such a policy:
Here the fair reading of Chapter 39 and Chapter 40, and especially with a view of close scrutiny on the legislative findings, there is an intention disclosed certainly by the Legislature to make uniform this industry throughout the State. [59 N.J. at 352; emphasis supplied]
It then indicated the exclusive nature of the legislative enactments in question.
In the Weehawken case [Weehawken Tp. Bd. of Health v. New York Cent. R. Co.], which I don't have here before me now, 4 N.J. [293], at 298, the Supreme Court said, "There cannot be in the nature of things a delegation of regulative power which in its varying local applications would render function under the State's charter impracticable."
This then would be the situation here if each municipality in the state could place and restrict in a manner similar to that which is restricted by the ordinance passed by the Parsippany-Troy Hills, and the conflicting ordinances and requirements of the separate municipalities would bring to a complete halt *415 the sanitary landfill operations in this state, the refuse disposal business, all to the detriment of the general health of the general public. [at 352; emphasis supplied]
Plaintiff suggests that local boards of health are required to act as monitoring agencies to deal with violation of a specific statute, rule or regulation, but that DEP and PUC have exclusive authority regarding approval, construction and installation of a landfill. N.J.S.A. 13:1E-6(b)(5) provides that DEP may contract with county and municipal boards of health for inspection and monitoring of solid waste facilities and enforcement of the DEP's standards therefor. N.J.S.A. 13:1E-9 also provides for enforcement of codes, rules and regulations by DEP and every local board of health. Indeed, a reading of N.J.A.C. 8:51-3.11 in its entirety suggests that the function of the local boards is to inspect and control the operation of landfill operations.
Ordinance 375 frustrates the legislative objective since local government lacks the "scope of alternatives and expertise to plan, develop and implement efficient and effective solutions to their solid waste problems." Furthermore, as stated in section 1 of the ordinance, it was enacted under the provisions of N.J.S.A. 13:1E-17 which has since been repealed. Defendant's reliance upon the Local Health Services Act is obviously an effort to find an alternate basis to uphold this local legislation.
Defendant also contends that municipalities have zoning jurisdiction over solid waste facilities by reason of the provisions of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. The trial judge found the township's zoning ordinance, under which a sanitary landfill is a nonpermitted use, invalid as applied to the Carrino sanitary landfill operation.
The township first argues that a solid waste facility, as a public utility within the meaning of N.J.S.A. 48:2-13, is subject to the jurisdiction of the local board of adjustment and that N.J.S.A. 40:55D-19 requires a public utility which proposes a *416 non-permitted use under the zoning ordinance to apply to the zoning board of adjustment for a variance. We believe that our previous discussion of the extent to which the Solid Waste Management Act and the Solid Waste Utility Control Act have preempted local regulation in the field of solid waste disposal applies equally well with respect to zoning and need not be repeated here. However, we note some additional sections which indicate that the Solid Waste Management Act does contemplate comprehensive land use planning.
N.J.S.A. 13:1E-20(a)(1) requires the development of a solid waste management plan for each respective district. Section (b)(2)(a) provides that in developing such plans the municipal government agencies responsible for zoning or land use within the solid waste management district must be consulted. In addition, local input is provided for by an advisory solid waste council in every county which includes, among others, municipal mayors or their designees. The council is designed to assist in development of solid waste management plans. N.J.S.A. 13:1E-20(b)(1). After the district plan is formulated, it must then be submitted to the public for comment at a hearing. N.J.S.A. 13:1E-23(c). Any person who shall have filed a written objection, pursuant to N.J.S.A. 13:1E-23(e), may have the adoption of a solid waste management plan reviewed by the Superior Court by a proceeding in lieu of prerogative writs. N.J.S.A. 13:1E-23(f). Finally, the plan is submitted to the Commissioner of DEP for review and final approval. N.J.S.A. 13:1E-24(a), (b). Again, there is a provision for public hearing should the Commissioner reject any plan in its entirety. N.J.S.A. 13:1E-24(d). The foregoing serves to reinforce the notion that a uniform scheme of statewide regulation was intended by the Legislature.
In Garden State Farms, above, 77 N.J. 439, the court analyzed the extent to which a local zoning ordinance must be considered by the commissioner of transportation in the exercise of his paramount authority under the Aviation Act. Although it *417 found the statutory scheme to be comprehensive, the court concluded that the language of the statute did not preclude the contribution of other entities in locating heliports and helistops subject to state supervision. 77 N.J. at 452. Cognizant of the significance of local interests, Justice Handler explained:
To pull together these diverse interpretive strands, suffice to state that the dominant legislative intent in the Aviation Act is to repose in the Commissioner of Transportation the ultimate authority as to the placement of aeronautical facilities, this predicated upon the mandate that the Commissioner shall "supervise" and "regulate" aeronautics in general and the "establishment, location * * size [and] design * * * of heliports and helistops" in particular (N.J.S.A. 6:1-29). We can thus agree with the Appellate Division's observation that while municipalities, consistent with the broad statutory purposes of zoning, N.J.S.A. 40:55D-2, may pass ordinances fixing particular land areas for airports or heliports or even ban them altogether, they must not exercise their zoning authority so as to collide with expressed policy goals of the State legislation, N.J.S.A. 6:1-20, or the final decision of the Commissioner. * * *
It does not follow, as found by the Appellate Division, that the Commissioner, in exercising this authority is "* * * free from municipal control except to the extent that the Commissioner, by regulation, deems it appropriate to give controlling weight to local zoning provisions." ... To the contrary, we perceive that it is entirely appropriate for the Commissioner to pay due attention to the lawful zoning expressions of local governments and not act "* * * in an unreasonable fashion so as to arbitrarily override all important legitimate local interests." * * * [454-455]
Here, the authority given to the Commissioner of DEP is somewhat different. Every solid waste management plan for each district must include a site plan, detailing all existing solid waste facilities and sufficient additional available sites. Upon certification to the Commissioner of the absence of such sites in the district and the failure to locate such sites in another district, the commissioner must cause a study to be made to determine the suitable location. N.J.S.A. 13:1E-21(b)(3). The statute further provides:

*418 * * * In determining the suitable location of solid waste facilities, the commissioner shall weigh the relative feasibility of alternative locations in terms of such factors as environmental impact, transportation patterns and their comparative costs, compatibility with the current land use policies in the immediate area of the alternative locations, as well as with the statewide solid waste management plan and such other master plans and planning policies as may exist at the municipal, county, regional or State levels, and such other criteria as the commissioner deems relevant. [Emphasis supplied]
This case is clearly distinguishable from Garden State Farms, above. Here, the statutory language is couched in mandatory phraseology. Upon completion of the aforementioned study, "the commissioner shall: Require the certifying board of chosen freeholders * * * to locate the required solid waste facilities within its own solid waste management district as part of the solid waste management plan therefor; or require any other board of chosen freeholders * * * to provide solid waste facilities * * *" The statute mandates consideration of local land use policies by the Commissioner, but it does not appear to contemplate the participation of municipalities in locating the facilities. The regional emphasis could not be clearer. Local regulation is preempted. Even if a municipality could properly enact a zoning ordinance concerning solid waste disposal, it can not exercise its zoning power so as to collide with expressed policy goals of State legislation. The ordinance in question, by completely prohibiting sanitary landfills, quite obviously frustrates the objectives of the Solid Waste Management Act.
The judgment in each of the three cases is affirmed.