181 N.J. Super. 445 (1981)
438 A.2d 334
TOWNSHIP OF CHESTER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY AND COMBE FILL CORPORATION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1981.
Decided October 26, 1981.
*446 Before Judges FRITZ, ARD and TRAUTWEIN.
*447 Phillip F. Guidone, argued the cause for appellant (Beck, Reichstein & Guidone, attorneys).
Dennis J. Krumholz, Deputy Attorney General, argued the cause for respondent Department of Environmental Protection of the State of New Jersey (James R. Zazzali, Attorney General, and John J. Degnan, former Attorney General, attorneys; Erminie L. Conley, Assistant Attorney General, of counsel; Dennis J. Krumholz, on the brief).
A brief was filed on behalf of respondent Combe Fill Corporation by Connell, Foley & Geiser, attorneys (Kevin J. Coakley, of counsel; Robert J. Kelly, on the brief).
The opinion of the court was delivered by ARD, J.A.D.
The Township of Chester (township) appeals from the decision of the Department of Environmental Protection (DEP) granting approval to Combe Fill Corporation (Combe Fill) to construct a 1,050-foot access road to its sanitary landfill in the township. Appellant contends that the provisions of its zoning ordinance requiring site plan approval and an environmental impact statement are "interstitial" interests not preempted by the Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq. The township also contends that the decision of the DEP is unsupported by the record.
The facts pertinent to this appeal are as follows: Combe Fill acquired the landfill in November 1978. In early 1979 it submitted a site plan for the construction of a new road in the landfill to the Township of Chester's Planning Board. It commenced construction on the road prior to securing approval. After review by the township engineer, the township successfully obtained an injunction preventing Combe Fill from continuing construction of the road until it secured approval.
Thereafter the DEP conducted a public hearing. Township Engineer Fox and other individuals were heard regarding the proposed road. The engineer stated:

*448 The proposed road is close to the zone boundary line between the commercial zone and the residential zone and is approximately 175 feet from a residence. The noise from trucks climbing the proposed road would be a nuisance.
The proposed plan does not contain provisions for drainage or storm water management. The proposed road would destroy an existing detention basin.
The proposed plan provides for the road to be surfaced with four inches of crushed stone or a quarry process. Mr. Fox [the engineer] stated that the road should be paved to provide an adequate surface on the road. Based on his experience, Mr. Fox stated that a dirt road or a stone road going up the slope with heavy truck traffic is not stable. Mr. Fox further stated that pavement is necessary for stability and to provide for a positive directional flow of water to a storm drain facility. Mr. Fox presented pictures showing Parker Road (the municipal road from which access is gained to the landfill) covered with mud and debris from the portion of the road which had been constructed prior to the injunction.
A steel guard rail should be constructed on the easterly side of the road to prevent trucks from going over the side of the slope.
Subsequently, in a memorandum, the engineer asserted that a variance, an environmental impact statement and an erosion control plan were required. He also claimed that the noise from the trucks using the new road would be a nuisance. Acting on that information, the Planning Board of the Township of Chester passed a resolution opposing the approval of the proposed plan and suggested alternate solutions. In January 1980 the township representatives conferred with the DEP. As a result, on February 19, 1980 Combe Fill submitted a revised plan for the proposed road. Township Engineer, Fox, again made critical observations and proposed additional recommendations. There was no public hearing on the revised plan.
On April 24, 1980 the Acting Director of the Solid Waste Administration approved the revised plan, expressing satisfaction with the operation of the landfill and its environmental ramifications. He also notified the township that it would not require Combe Fill to comply with Fox' proposal changing the location of the road. DEP maintained that the construction of the road, as per the Fox recommendation, would have required extensive removal of rock.
In disputing the action of DEP the township does not argue that the Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq., *449 is not preemptive with regard to major matters. Rather, appellant argues that certain "interstitial" interests have not been preempted by the act and remain under the jurisdiction of the township. It contends that its interest in requiring site plan approval for new development in the municipality and in seeking compliance with it zoning ordinance setting environmental noise and erosion control standards has not been preempted by the act. Alternatively, it argues that the DEP should have given more careful consideration to these municipal interests.
As indicated, the basic issue is whether local regulation is preempted by the Solid Waste Management Act. In Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348, 350-352 (1971), our Supreme Court held that the Solid Waste Management Act was a comprehensive plan on the part of the State to control all facets of the industry. This factor, combined with a legislative intent to make the industry uniform, mandates the conclusion that, the Solid Waste Management Act preempts municipal regulation. Id. at 354. In recognition of the comprehensive holding in Ringlieb, the Legislature enacted a supplement, specifically N.J.S.A. 13:1E-17, which returned to local authorities the power to regulate the health and environmental protection aspects of solid waste disposal. Commenting on this supplemental legislation, our Supreme Court stated in Pleasure Bay Apts. v. Long Branch, 66 N.J. 79 (1974):
In apparent reaction to our opinion in Ringlieb, the Legislature enacted L. 1971, c. 461 as a supplement to the Solid Waste Management Act (1970). The 1971 act, approved and effective February 21, 1972, added three sections to the 1970 act. The third, authorizing the imposition of fees by the Department of Environmental Protection for its services, is irrelevant to the issues before us. The first two now appear as N.J.S.A. 13:1E-16 and 17 and provide:
"Nothing in the act to which this act is a supplement shall be deemed or construed in any way to affect the powers of local boards of health in relation to health and environmental protection aspects of solid waste collection or solid waste disposal.
........
No ordinances or regulations of any governing body of a municipality or county or board of health more stringent than this act or any rules or regulations promulgated pursuant thereto, and relating to health and environmental *450 protection aspects of solid waste collection or solid waste disposal, shall be superseded by this act. Nothing in this act or in any rules or regulations promulgated pursuant thereto shall preclude the rights of the governing body of any municipality or county or board of health to adopt health or environmental protection ordinances or regulations more stringent than this act or any rules or regulations promulgated pursuant thereto." [at 87-88]
The Legislature returned certain powers to the municipalities. Thus, at this posture of the law, we would have been favorably disposed toward the township's position. However, N.J.S.A. 13:1E-16, 13:1E-17 were repealed by L. 1975, c. 326, § 36. The repealed sections, 16 and 17, were withdrawn from municipal control by the Legislature, the result of which was to return jurisdiction to the State where it had reposed at the time of Ringlieb v. Parsippany-Troy Hills Tp., supra.
Nonetheless, appellant still argues the Solid Waste Management Act has not preempted the entire field. It urges municipalities remain free to regulate local concerns as manifested in local land use ordinances. We disagree.
A municipality may not act in an area which the Legislature has preempted. Fair Law Ed. Ass'n v. Fair Lawn Bd. of Ed., 79 N.J. 574, 586 (1979). "When the Legislature has preempted a field by comprehensive regulation, a municipal ordinance attempting to regulate the same field is void if the municipal action adversely affects the legislative scheme." Plaza Joint Venture v. Atlantic City, 174 N.J. Super. 231, 238 (App.Div. 1980).
... The principle of preemption is founded upon the proposition that the "municipality may not exert the delegated police power in terms which conflict with a State statute, and hence a municipality may not deal with a subject if the Legislature intends its own action, whether it exhausts the field or touches only part of it, to be exclusive and therefore to bar municipal legislation." [Horner v. Ocean Tp., 175 N.J. Super. 533, 540 (App.Div. 1980)]
Pertinent questions for consideration in determining the applicability of preemption include the following:
1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)? [Citation omitted].
2. Was the state law intended, expressly or impliedly, to be exclusive in the field? [Citations omitted].

*451 3. Does the subject matter reflect a need for uniformity? [Citations omitted].
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? [Citations omitted].
5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature? [Citation omitted].
[Overlook Terr. Manage. v. West New York Rent Control Bd., 71 N.J. 451, 461-462 (1976)]
With the foregoing principles in mind, and in light of the history of this legislation, we are constrained to find preemption. The requirement for uniform statewide treatment of this subject matter is reflected in the legislative findings and declaration of policy in the Solid Waste Management Act. N.J.S.A. 13:1E-2(a) states:
a. The Legislature finds that the collection, disposal and utilization of solid waste is a matter of grave concern to all citizens and is an activity thoroughly affected with the public interest; that the health, safety and welfare of the people of this State require efficient and reasonable solid waste collection and disposal service or efficient utilization of such waste; that the management of solid waste in New Jersey consists largely of piecemeal, uncoordinated activities developed to meet the immediate needs of local governments with little, if any, regard for regional planning and coordination; that local units of government acting on their own, despite the most dedicated and sincere efforts, lack the financial resources, scope of alternatives and expertise to plan, develop and implement efficient and effective solutions to their solid waste problems; and that, for the most part, the solid waste planning and management process is adversely affected by the absence of area-wide structures, the limitations of local initiative, the general inadequacy of State technical assistance, the paucity of State grants for solid waste experimentation, the failure of the State to establish guidelines for the preparation of county and intercounty plans, and the failure to implement county and intercounty solid waste collection, disposal and utilization operations.
Likewise, the act and its accompanying regulations reflect a comprehensive regulatory scheme. See N.J.A.C. 7:26-1.1 et seq. The township ordinance seeks to regulate the site plan approval for environmental impact of the construction of the Combe Fill access road in the sanitary landfill. Note that N.J.A.C. 7:26-2.4 requires that an applicant for a sanitary landfill submit an engineering design. The design must include, among others, a description of all surface and subsurface drains which are used to control the passage of water from areas on, or adjacent to, *452 the landfill property; all proposed landscaping and beautification techniques, and an environmental impact statement. N.J.A.C. 7:26-3.4 sets standards for the use of collection vehicles to prevent spillage of solid wastes onto the roadways and highways of the State. See, also, N.J.A.C. 7:26-1 et seq. for the explicit and detailed character of the solid waste management regulations. Thus, the aforementioned regulations effect a specific scheme of waste control management. Moreover, the regulation requiring an engineering design which includes an environmental impact statement, drainage data and landscaping provisions indicates that the interests which the township ordinance seeks to protect have been included in the State regulatory scheme. Therefore, enforcement of the provisions of the township ordinance requiring site plan approval and compliance with environmental standards would duplicate state regulations and thus may serve to frustrate the purposes of the Solid Waste Management Act. See Ringlieb v. Parsippany-Troy Hills Tp., supra 59 N.J. at 351.
In Little Falls Tp. v. Bardin, 173 N.J. Super. 397 (App.Div. 1979), we held that a zoning ordinance which precludes the operation of a sanitary landfill within the geographic boundaries of a township was preempted by the Solid Waste Management Act. The court, in discussing N.J.S.A. 13:1E-21(b)(3), notes that:
... The statute mandates consideration of local land use policies by the Commissioner, but it does not appear to contemplate the participation of municipalities in locating the facilities. The regional emphasis could not be clearer. Local regulation is preempted. Even if a municipality could properly enact a zoning ordinance concerning solid waste disposal, it can not exercise its zoning power so as to collide with expressed policy goals of State legislation. The ordinance in question, by completely prohibiting sanitary landfills, quite obviously frustrates the objectives of the Solid Waste Management Act. [418]
The Little Falls Tp. case involves an ordinance which specifically prohibits landfill ordinances and is an explicit example of an ordinance in direct conflict with state law.
The expressed policy of the act dictates the need for uniformity and regionalization as opposed to localization in the regulation *453 of sanitary landfills. N.J.S.A. 13:1E-2(a); South Ocean Landfill v. Ocean Tp., 64 N.J. 190, 196 (1974); Little Falls Tp. v. Bardin, supra 173 N.J. Super. at 418. See In re Combustion Equipment Assocs. Application, 169 N.J. Super. 305, 310 (App. Div. 1979). Likewise, the repeal of N.J.S.A. 13:1E-16, 13:1E-17, which permitted local boards to enact regulations more stringent than the act in relation to health and environmental protection aspects of solid waste collection or disposal, indicates a legislative intent that the state law should be exclusive in the field. Therefore, the Chester Township zoning ordinance is inoperative with respect to the construction of the access road to the Combe Fill sanitary landfill because the State has preempted this particular area from municipal regulation. Overlook Terr. Manage. v. West New York Rent Control Bd., supra 71 N.J. at 459-462.
However, though the field has been preempted, the DEP is not free to disregard conflicting local zoning ordinances. Garden State Farms, Inc. v. Mayor Louis Bay, II, 77 N.J. 439, 454-455 (1978). The Solid Waste Management Act specifically provides for local input into solid waste management decisions. N.J.S.A. 13:1E-21(b)(3); Little Falls Tp. v. Bardin, supra 173 N.J. Super. at 417-418.
Here, there is no doubt that the interests of the township were considered by the DEP. On August 22, 1979 the Solid Waste Administration of the DEP approved Combe Fill's design for the construction of the access road. However, on October 3, 1979 the DEP stayed its approval pending the receipt of public comment on the road construction. On November 14, 1979 a public hearing was held. Combe Fill submitted a revised plan incorporating various alterations to their plan in response to the public hearing. In January 1980 the DEP met with representatives of Chester Township as well as Combe Fill. Combe Fill submitted a second revised plan incorporating various alterations to the plan, including moving the road farther from adjacent property owners, one of the complaints of the township. *454 Final approval of Combe Fill's plan was conditioned on the installation of proper drainage as well as paving the road should it prove necessary, the basic complaints of the township. The local concerns of the township were considered by the DEP. There was no error in its April 24, 1980 approval of the plan for the relocation of the Combe Fill landfill access road.
Appellant's secondary argument, that the decision of the DEP was not supported by the weight of the evidence, is also without merit. An appellate court will not upset an agency determination unless it is shown that the decision was either arbitrary, capricious or unreasonable, or that it violated legislative policies expressed or implied in the act governing the agency. Campbell v. Civil Service Dep't, 39 N.J. 556, 562 (1963). Clearly, here the action of the DEP in granting Combe Fill approval to construct a new access road was neither arbitrary nor unreasonable. The DEP approved Combe Fill's initial design, stating that "[t]he reduced grade provided by the new two lane road will improve the traffic flow to and from the working face" and noting that the design was "environmentally acceptable." This decision was stayed pending a public hearing on November 14, 1979. Combe Fill subsequently submitted two revised plans which incorporated alterations suggested at the hearing and at meetings of the DEP with the township and Combe Fill. The second revised plan moved the road farther from the adjacent property. Likewise, final approval of the plan was conditioned on the creation of a buffer zone, property drainage and proper maintenance of the road surface which was required to be paved if necessary. Moreover, the DEP responded to the township's desire to have the access road reconstructed in its prior position by letter stating that such reconstruction would require extensive removal of rock and blasting. Contrary to appellant's contention, the record indicates that the DEP carefully considered the effect construction of the road would have on the environment and adjacent property and was cognizant of the local concerns when approving the Combe Fill plan.
Affirmed.