661 A.2d 1305

HOLGATE PROPERTY ASSOCIATES, A NEW JERSEY PARTNER-
SHIP, PLAINTIFF–RESPONDENT, v. TOWNSHIP OF HOWELL,
ZONING BOARD OF ADJUSTMENT OF HOWELL TOWNSHIP
AND THOMAS SAVINO, ENGINEERING COORDINATOR, DE-
FENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued February 23, 1995—Decided July 28, 1995.

312

Before Judges SKILLMAN, WALLACE and KLEINER.

*William Gilroy* argued the cause for appellants (*Gilroy, Cramer & McLaughlin,* attorneys; *Dennis M. Crawford,* on the brief).

*Nancy G. Wright* argued the cause for respondents (*Bathgate, Wegener, Dugan & Wolf,* attorneys; *Ms. Wright,* on the brief).

*Judeth A. Piccinini,* Deputy Attorney General, argued the cause for *amicus curiae* New Jersey Department of Environmental Protection and Energy (*Deborah T. Poritz,* Attorney General; *Mary C. Jacobson* and *Lawrence E. Stanley,* Assistant Attorneys General, of counsel; *Ms. Piccinini,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The primary issue presented by this appeal is whether the Department of Environmental Protection (DEP) must designate the site for a solid waste or sludge disposal facility in conformity with the procedures and criteria that govern solid waste planning under the Solid Waste Management Act (SWMA), *N.J.S.A.* 13:1E–1 to –48, in order to preempt municipal zoning.

It is appropriate at the outset to set forth the pertinent provisions of the SWMA. This legislation designates each county and the Hackensack Meadowlands Development District as solid waste management districts (districts), *N.J.S.A.* 13:1E–2(b)(2), which are required to "develop and formulate ... solid waste management plan[s]" (plans). *N.J.S.A.* 13:1E–20(a). Such a plan must include a "site plan" which identifies "all existing solid waste facilities" and designates "sufficient additional available suitable sites to provide solid waste facilities to treat and dispose of the actual and projected amounts of solid waste" generated within the district. *N.J.S.A.*

13:1E–21(b)(3). In formulating a plan, a district must consult with the advisory solid waste council established in the district, which includes "municipal mayors or their designees," *N.J.S.A.* 13:1E–20(b)(1), and with "the ... municipal government agencies ... responsible for ... land use within the ... district." *N.J.S.A.* 13:1E–20(b)(2)(a). Before adopting a plan, a district must hold a public hearing at which "persons interested in, or who would be affected by" the plan, including municipalities within the district, are given an opportunity to be heard orally or in writing. *N.J.S.A.* 13:1E–23(c). If a district approves a plan, it must be transmitted together with a transcript of the hearing to the Commissioner of the DEP for review and approval. *N.J.S.A.* 13:1E–23(g); *N.J.S.A.* 13:1E–24.

Districts are also authorized to enter into agreements to provide for the disposal of waste originating in other districts. *N.J.S.A.* 13:1E–21(b)(3). If districts are unable to reach such an agreement, the Commissioner of the DEP, in conjunction with the Board of Public Utilities, may order the districts to amend their plans to provide for the interdistrict flow of waste. See *A.A. Mastrangelo, Inc. v. Commissioner, Dept. of Envtl. Protection,* 90 *N.J.* 666, 449 *A.*2d 516 (1982). Moreover, if a district fails to adopt a plan in conformity with the SWMA, the DEP may formulate and adopt a plan for that district. *N.J.S.A.* 13:1E–23(a), (i). See *State, Dept. of Envtl. Protection v. Middlesex County Bd. of Chosen Freeholders,* 206 *N.J.Super.* 414, 427–30, 502 *A.*2d 1188 (Ch.Div.1985), *aff'd o.b.,* 208 *N.J.Super.* 342, 506 *A.*2d 13 (App.Div. 1986).

In addition to these provisions governing solid waste planning, which include the designation of sites for disposal facilities, the SWMA confers comprehensive authority upon the DEP to regulate the construction and operation of such facilities. The DEP's supervisory powers include "the registration of new and existing solid waste ... disposal facilities and operations." *N.J.S.A.* 13:1E–4(a). Such a registration may be granted only if it "conform[s] to" the district's plan. *N.J.S.A.* 13:1E–4(b). However, if

the DEP has not yet approved a district's plan, it may nevertheless "grant approval to any new solid waste ... disposal operation or facility planned to be located in any such district and that district shall include said operation or facility in its plan." *Ibid.* Thus, the SWMA envisions that planning in conformity with the statute generally will precede the approval of new disposal facilities, but that some new facilities may be authorized during a transitional period before the development of a comprehensive plan. See *In re Amendments to Solid Waste Management Plan of Hackensack Meadowlands Dev. Comm'n,* 275 *N.J.Super.* 375, 392–93, 646 *A.*2d 463 (App.Div.), *certif. denied,* 139 *N.J.* 289, 654 *A.*2d 470 (1994). The Supreme Court has described these provisions as establishing "a framework for the coordination of solid waste collection, disposal and utilization activity in New Jersey." *A.A. Mastrangelo, Inc. v. Commissioner of Dept. of Envtl. Protection, supra,* 90 *N.J.* at 672, 449 *A.*2d 516.

In 1977, the Legislature extended the provisions of the SWMA to sludge, *L.* 1977, *c.* 328, which is defined as "the solids, precipitates and liquids, other than effluent, which are produced as a result of the storage or treatment of domestic and industrial sewage." *N.J.S.A.* 13:1E–44(a). The Legislature found, among other things, that "land disposal methods and new technological processes now make it feasible to minimize the adverse effects of sludge while deriving useful products therefrom," *N.J.S.A.* 13:1E–43(a), "that State programs which seek to provide for comprehensive approaches to the proper disposal or utilization of solid waste sludge must be regional in nature[,] and that the interests of the citizens of this State would best be served through an integration of sludge management with the regional solid waste planning and management process." *N.J.S.A.* 13:1E–43(b). The Legislature therefore required each district, as part of its plan, to provide:

a. An inventory of the sources, composition, and quantity of sludge presently generated within the solid waste management district;

b. Projections of the amounts and composition of sludge which will be generated within the district in each of the subsequent 10 years;

c. An inventory and appraisal, including the identity, location and life expectancy, of any solid waste facility or recycling facility located within the district which could be utilized for the processing or land disposal of sludge;

d. An analysis of the present systems of sludge disposal for the district.

e. A statement of the sludge disposal strategy to be applied in the district, which strategy shall provide for the maximum practical processing of all sludge generated within the district following the adoption of the solid waste management · plan by such district and for the processing or land disposal of any sludge generated within the district after December 31, 1981; ...

f. A site plan, which shall include all existing solid waste facilities or recycling facilities which could be utilized for the processing or land disposal of sludge, provided that they are operated and maintained in accordance with all applicable health and environmental standards, and sufficient additional available suitable sites to provide for the processing or land disposal of the amounts of sludge presently generated within the district as well as the amounts of sludge projected to be generated in each of the subsequent 10 years.

[*N.J.S.A.* 13:1E–45.]

In addition, the Legislature directed that "[a]ll sludge generated within the boundaries of any ... district in this State shall be disposed of in a manner which conforms to the Statewide ... plan and the solid waste management plan for the district wherein such sludge is generated." *N.J.S.A.* 13:1E–47.

Although the amendment extending the provisions of the SWMA to sludge became effective on January 10, 1978, the DEP informs us that it did not adopt a Statewide Sludge Management Plan until 1987 [1] and that only Burlington County has adopted a district level sludge management plan as required by *N.J.S.A.* 13:1E–45. In addition, the Deputy Attorney General appearing on behalf of the DEP informed us at oral argument that the DEP has not exercised the authority conferred upon it by *N.J.S.A.* 13:1E–23(a) and (i) to adopt plans for the processing or land disposal of sludge in any of the other twenty-one districts. Consequently, the comprehensive regional planning for the processing and land disposal of sludge mandated by the Legislature in 1977 has not yet been undertaken in most areas of the State.

---

[1] This appeal does not require us to consider whether this plan and its supplements conform with the requirements of the SWMA.

The facts relevant to this appeal must be viewed in light of this statutory and regulatory backdrop. Plaintiff is the owner of a fifty-five acre tract of land in Howell Township which has been used for a substantial period of time for quarrying operations, including soil removal. Plaintiff's property is located in an area recently rezoned as a "Special Economic Development—Office Research" district, and thus its business constitutes a nonconforming use.

On February 11, 1993, the DEP issued a "NJPDES Permit Exemption" to the Middlesex County Utilities Authority (MCUA) to produce and store sludge-derived product mixtures at plaintiff's property for distribution to end users.[2] Under this permit exemption, plaintiff began transporting sludge-derived material from the MCUA, mixing the sludge with excavated clay material, and storing the resulting material on site. The Township of Howell (the Township) notified plaintiff that this sludge processing and storage operation constituted an unauthorized expansion of a nonconforming use, and issued a stop work order.

Plaintiff then filed this lawsuit against the Township, its Board of Adjustment and one of its officials, seeking a determination that the Township's enforcement of its zoning ordinance to prevent the processing and storage of sludge on plaintiff's property is preempted by the SWMA. The matter was brought before the trial court by an order directing defendants to show cause why they should not be enjoined from enforcing the township zoning ordinance and the stop work order.

In opposition, defendants filed the certification of the owner of a home near plaintiff's property, which alleged that plaintiff's sludge storage activities had generated a mound of material, located only 900 to 1,000 feet from his property, which was approximately 80

---

2 The DEP had previously issued another NJPDES permit exemption authorizing the dumping of sludge on plaintiff's property. Plaintiff apparently engaged only in limited operations under this permit, and the Township of Howell never expressed any objection to those operations.

feet high, 200 feet wide and 400 feet deep. The homeowner alleged that a "strong, foul sewage-like odor" was emanating from plaintiff's property, and that trucks transporting sludge to the property sometimes drop foul smelling material onto the roadway in front of his house. The homeowner further alleged that water from the sludge was draining into several local streams and then into the Manasquan River. Defendants also submitted a certification confirming that Monmouth County's approved solid waste management plan does not designate plaintiff's site for waste disposal.

The trial court concluded in a written decision, memorialized by a judgment entered on October 21, 1993, that because the SWMA and the Solid Waste Utility Control Act, *N.J.S.A.* 48:13A–1 to –13, are the "sole sources of authority" for the regulation of solid waste, including sludge, the Township's zoning and the stop work order issued to enforce that zoning are preempted by the February 11, 1993 NJPDES permit which the DEP issued to the MCUA.

Defendants appeal. Since we conclude that neither Monmouth County nor the DEP has adopted an amendment to the Monmouth County solid waste management plan or taken any other action in conformity with the procedures and criteria of the SWMA that designates plaintiff's property as a suitable site for the processing and storage of sludge, we reverse.

We have frequently stated that the Legislature intended regulation under the SWMA to preempt all municipal regulation of solid waste facilities, including zoning. *See, e.g., Ocean County Utils. Auth. v. Planning Bd. of Township of Berkeley*, 223 *N.J.Super.* 461, 538 *A.2d* 1307 (App.Div.1988), *aff'g* 221 *N.J.Super.* 621, 535 *A.2d* 550 (Law Div.1987); *Township of Chester v. Department of Envtl. Protection*, 181 *N.J.Super.* 445, 438 *A.2d* 334 (App.Div. 1981); *Township of Little Falls v. Bardin*, 173 *N.J.Super.* 397, 414 *A.2d* 559 (App.Div.1979); *see also Southern Ocean Landfill, Inc. v. Mayor and Council of Township of Ocean*, 64 *N.J.* 190, 314 *A.2d* 65 (1974); *Ringlieb v. Township of Parsippany–Troy Hills*, 59

*N.J.* 348, 283 *A.*2d 97 (1971) (both involving the interpretation of the predecessor to the SWMA). However, we have never held that municipal zoning that prohibits the use of land for solid waste or sludge facilities was preempted solely by enactment of the SWMA, without implementing administrative action. To the contrary, our decisions have indicated that a district must consider zoning and other local concerns and must afford affected municipalities and property owners an opportunity to be heard before adopting a plan that will preempt municipal zoning. For example, in *Township of Little Falls v. Bardin, supra,* we noted that "[t]he requirement of public hearings prior to adoption of such plans allows municipalities the opportunity to contribute," 173 *N.J.Super.* at 414, 414 *A.*2d 559, and that "local input is provided for by an advisory solid waste council in every county which includes, among others, municipal mayors or their designees." *Id.* at 416, 414 *A.*2d 559. We also noted that "[t]he statute mandates consideration of local land use policies by the Commissioner." *Id.* at 418, 414 *A.*2d 559; *see also Township of Chester v. Department of Envtl. Protection, supra,* 181 *N.J.Super.* at 453, 438 *A.*2d 334 ("The [SWMA] specifically provides for local input into solid waste management decisions."). In fact, our recent decisions explicitly state that it is the adoption of a plan under the SWMA that preempts municipal zoning. In *Regional Recycling, Inc. v. State, Dept. of Envtl. Protection,* 256 *N.J.Super.* 94, 102, 606 *A.*2d 817 (App.Div.1991), *aff'd o.b.,* 127 *N.J.* 568, 606 *A.*2d 815 (1992), we stated that "a zoning ordinance prohibiting a use contemplated by the plan [is] invalid because it 'frustrates the objectives' of the [SWMA]." Similarly, in *In re Amendments to Solid Waste Management Plan of Hackensack Meadowlands Dev. Comm'n, supra,* 275 *N.J.Super.* at 384, 646 *A.*2d 463, we stated that "[o]ne of the fundamental principles underlying the SWMA is that solid waste management plans adopted by districts and approved by the Commissioner preempt municipal zoning ordinances which prohibit the siting of solid waste facilities."

The DEP argues that it complied with the planning provisions of the SWMA, thereby preempting local zoning, by issuing a

NJPDES permit exemption to plaintiff. The DEP relies upon the final clause of *N.J.S.A.* 13:1E–4(a), which authorizes the DEP to exempt solid waste facilities from registration, and the second sentence of *N.J.S.A.* 13:1E–4(b), quoted previously at pp. 3–4, which authorizes the DEP to approve a registration statement for a solid waste facility prior to the approval of a plan for the district in which the facility is located. The DEP contends that the NJPDES permit exemption letter that it issued to plaintiff constituted not only an exemption from the requirement of registration, in conformity with *N.J.S.A.* 13:1E–4(a), but also the approval of a solid waste facility prior to approval of a plan, in conformity with *N.J.S.A.* 13:1E–4(b).

The Legislature undoubtedly included the final sentence of *N.J.S.A.* 13:1E–4(b) as a transitional measure, anticipating that districts would require some time to complete their plans and that there would be a need for the DEP to approve new collection or disposal operations during this interim period. See *In re Application of Combustion Equipment Assocs., Inc.*, 169 *N.J.Super.* 305, 404 *A.*2d 1194 (App.Div.1979). We doubt whether the Legislature contemplated that the DEP would still have a need to resort to this power more than fifteen years after enactment of the sludge amendments to the SWMA. However, we do not believe that the Legislature could have intended to deprive the DEP of all power to approve new sludge disposal facilities simply because the districts and the DEP had failed to perform their planning responsibilities in the manner provided by the SWMA. Therefore, we conclude that the DEP has the authority to approve a sludge processing and storage operation on plaintiff's property even though sludge management plans have not been approved for either Middlesex County, which is the source of the sludge, or Monmouth County, which is the location of plaintiff's facility.

The further question presented by this appeal is whether the DEP complied with the procedures and criteria of the SWMA in approving plaintiff's sludge processing and storage operation through the issuance of NJPDES permit exemption. We conclud-

ed in *Combustion Equipment Assocs.* that the DEP has the authority under the final sentence of *N.J.S.A.* 13:1E–4(b) to grant a permanent approval of a proposed new disposal facility even though no plan has been approved for the district in which the proposed facility is to be located. However, we had no occasion in *Combustion Equipment Assocs.* to consider the procedural or substantive prerequisites of such an approval.

The evident intent of the final sentence of *N.J.S.A.* 13:1E–4(b) was to avoid the regulatory paralysis and consequent aggravation of the State's waste disposal crisis that could occur if the DEP were completely prohibited from approving new collection operations or disposal facilities during the interim period between the enactment of the SWMA and the formulation and approval of a plan. However, we discern no legislative intent to authorize the DEP to completely ignore the planning procedures and criteria set forth in the SWMA in exercising its authority to approve a particular facility on an *ad hoc* basis before the approval of a comprehensive plan. To the contrary, to implement the underlying legislative policies of coordinating "all solid waste collection, disposal and utilization activity," *N.J.S.A.* 13:1E–2(b)(1), and providing "citizens and municipalities with opportunities to contribute to the development and implementation of solid waste management plans," *N.J.S.A.* 13:1E–2(b)(3), *N.J.S.A.* 13:1E–4(b) must be interpreted to require the DEP to follow the basic planning procedures and criteria of the SWMA before approving a facility. This interpretation of *N.J.S.A.* 13:1E–4(b) also reduces the risk that a facility approved during the interim period before adoption of a plan will conflict with that plan, and assures that local concerns are given due consideration before the DEP takes action that is preemptive of municipal zoning and regulation. Therefore, we conclude that when the DEP considers an application for approval of a solid waste or sludge disposal facility before approving a district's plan, it must afford affected parties, including the municipality and county in which the facility is proposed to be located, an opportunity to be heard in accordance with the procedures set forth in *N.J.S.A.* 13:1E–23, and must consider the

planning criteria set forth in *N.J.S.A.* 13:1E–21 and *N.J.S.A.* 13:1E–45.

■ It is clear that DEP's approval of plaintiff's facility through the issuance of a NJPDES permit exemption did not conform with the procedures and criteria that govern sludge management planning under the SWMA. The MCUA's application for that permit exemption contained no detailed information regarding the site or the sludge operation proposed to be conducted on the site. It simply indicated that the primary use in the area was "light industry," that the activity to be conducted on the site was "mixing topsoil," that the storage capacity of the site was 100,000 cubic yards, and that "[t]he area is naturally bermed to prevent run-off." The application did not indicate whether there were any residences or other uses in the area that might be incompatible with a sludge facility, how sludge would be transported to the site, or the precise location where sludge would be stored on the site. The application also failed to indicate whether there was "any solid waste facility or recycling facility located within [Middlesex County] which could be utilized for the processing or land disposal of [the MCUA's] sludge." *N.J.S.A.* 13:1E–45(c). Furthermore, the DEP granted the MCUA's application without first consulting with Township officials or with the district's advisory solid waste council, as contemplated by *N.J.S.A.* 13:1E–20(b)(2)(c) and *N.J.S.A.* 13:1E–2(b)(1), and without holding a public hearing, as required by *N.J.S.A.* 13:1E–23(c). Thus, the DEP approved the use of plaintiff's property as a sludge facility without considering "local land use policies," *Township of Little Falls v. Bardin, supra,* 173 *N.J.Super.* at 418, 414 *A.2d* 559, or affording the Township "the opportunity to contribute." *Id.* at 414, 414 *A.2d* 559. Therefore, the DEP's action failed to comply with the prerequisites of the SWMA for preemption of municipal zoning.[3]

---

[3] This conclusion makes it unnecessary for us to decide whether the DEP complied with the provisions of *N.J.S.A.* 13:1E–4(a), *N.J.S.A.* 13:1E–6 and *N.J.S.A.* 13:1E–26 governing the approval of waste disposal facilities. See *In re Issuance of Hazardous Waste Facility Permit by Dept. of Envtl. Protection to ICI*

Accordingly, we reverse the order declaring that the Township of Howell is preempted from enforcing its zoning ordinance to prevent the conduct of a sludge processing and storage operation on plaintiff's property, and remand for the entry of a judgment in favor of defendants.

*Americas, Inc.*, 258 *N.J.Super.* 483, 610 *A.2d* 420 (App.Div.1992); *Terminal Const. Corp. v. Hoboken-Union City–Weehawken Sewerage Auth.*, 244 *N.J.Super.* 537, 582 *A.2d* 1288 (App.Div.1990), *certif. denied*, 126 *N.J.* 323, 598 *A.2d* 883 (1991).