SOUTHERN OCEAN LANDFILL, INC., A NEW JERSEY COR-
PORATION, PLAINTIFF-APPELLANT, v. MAYOR AND
COUNCIL OF THE TOWNSHIP OF OCEAN; THE TOWN-
SHIP OF OCEAN, A MUNICIPAL CORPORATION; THE
TOWNSHIP OF OCEAN BOARD OF HEALTH AND WIL-
LIAM SENKBEIL, DEFENDANTS-RESPONDENTS.

Argued September 11, 1973—Decided January 22, 1974.

Mr. *Vincent J. Dotoli* argued the cause for appellant.

Mr. *Garry J. Roettger* argued the cause for respondents (*Messrs. Hiering, Grasso, Gelzer & Kelaher,* attorneys).

Mr. *George F. Kugler, Jr.,* Attorney General of New Jersey, filed a brief for *amici curiae* Board of Public Utility Commissioners and the Department of Environmental Protection.

The opinion of the Court was delivered by

SULLIVAN, J. Plaintiff Southern Ocean Landfill, Inc. is the operator of a sanitary landfill on property owned by it in Ocean Township. It has obtained the necessary permit to operate from the Board of Public Utility Commissioners under the Solid Waste Utility Control Act of 1970 (*N. J. S. A.* 48:13A–1 *et seq.*) and the approval of the Department of

Environmental Protection required by the Solid Waste Management Act (1970), (*N. J. S. A.* 13:1E-1 *et seq.*).

In February 1972 it filed a complaint in lieu of prerogative writs challenging a provision of a sanitary landfill regulatory ordinance adopted by the Township of Ocean in 1970. The provision in question, Section 5(e), originally banned the depositing in any part of a landfill site in the Township of "[s]ewerage or any other materials from septic tanks and cesspools." The suit was precipitated by a summons issued out of the Municipal Court of the Township charging plaintiff with a violation of Section 5(e) of the ordinance.

In the in-lieu action the validity of the ordinance provision was upheld by the trial court on the basis of the then recent supplement to the Solid Waste Management Act which provided:

> "No ordinances or regulations of any governing body of a municipality or county or board of health more stringent than this act or any rules or regulations promulgated pursuant thereto, and relating to health and environmental protection aspects of solid waste collection or solid waste disposal, shall be superseded by this act. Nothing in this act or in any rules or regulations promulgated pursuant thereto shall preclude the rights of the governing body of any municipality or county or board of health to adopt health or environmental protection ordinances or regulations more stringent than this act or any rules or regulations promulgated pursuant thereto." (*L.* 1971, *c.* 461, § 2; *N. J. S. A.* 13:1E-17).

The trial court held in effect that the ordinance provision was a "more stringent" regulation within the ambit of the supplement, *supra.*

After plaintiff had appealed to the Appellate Division, and while the matter was pending there, the Township amended Section 5(e) so as to continue the ban on depositing of sewerage and any other materials from septic tanks and cesspools "unless such sewerage or materials emanated from sewerage, septic or cess pool systems located entirely within the municipal boundaries of the Township."

The Appellate Division, in an unreported *per curiam* opinion, affirmed "substantially for the reasons both explicit and implicit" given by the trial court. This Court granted certification on plaintiff's petition. 63 *N. J.* 328 (1973).

Following oral argument before us, and at our request, the Attorney General submitted a brief as *amici curiae* setting forth the extent of State interest in the controversy. All parties were afforded the opportunity to reply to the Attorney General's brief. For reasons hereinafter stated, we declare the section in question facially invalid as in contravention of an expressed legislative plan.

The disposition of solid waste in this State has reached crisis proportions. In the past there was ample land area to accommodate the dumping of garbage and other waste. Consequently, regulation thereof was left largely to local authorities subject only to State Board of Health requirements. *Shaw v. Byram Township,* 86 *N. J. Super.* 598 (App. Div.), certif. den. 45 *N. J.* 35 (1965). As existing garbage dumps became filled and other available sites grew scarce, the State took notice of the fact that local government was unable to deal with the overall situation and that serious problems of public health, welfare and environmental control existed.

The legislative response to the crisis was the enactment of the two statutes heretofore mentioned, the Solid Waste Utility Control Act of 1970 and the Solid Waste Management Act of 1970.

Both acts contain a declaration of legislative policy that the collection, disposal and utilization of solid waste is a matter of grave concern to all citizens, is an activity thoroughly affected with the public interest, and that the health, safety and welfare of the people of this State require efficient and reasonable solid waste collection, disposal and utilization service. The declaration of policy in the Solid Waste Management Act (*N. J. S. A.* 13:1E–2) goes on to state that:

"[T]he current solid waste crisis should be resolved not only by the enforcement of more stringent and realistic regulations upon the solid

waste industry, but also through the development and formulation of State-wide, regional, county, and intercounty plans for solid waste management and guidelines to implement the plans."

Under these statutes, a sanitary landfill operation must be licensed by the Board of Public Utility Commissioners which regulates the economic aspects thereof. See *N. J. A. C.* 14: 3–10.1, *et seq.* In addition, such operation is subject to the supervision of the Department of Environmental Protection which is empowered to adopt codes, rules and regulations related to solid waste collection and disposal. Under the Solid Waste Management Act the Department may develop a statewide solid waste management plan along with guidelines to implement such plan; and, to the extent practicable, encourage and assist in the development and formulation of regional, county and intercounty solid waste management programs. *N. J. S. A.* 13 :1E–6 (c).

The thrust of these statutes is the legislative recognition that the public interest requires that control over solid waste management no longer remain essentially a function of local government subject only to compliance with the State Sanitary Code. Instead, the Legislature has assumed the responsibility for regulating solid waste management on a statewide basis through regional, county and intercounty plans.

In enacting this legislation the State has preempted the field of solid waste management *Ringlieb v. Parsippany Troy Hills Tp.,* 59 *N. J.* 348 (1971), subject only to the 1971 supplement to the Solid Waste Management Act, *supra,* relied on by the trial court to sustain the ordinance provision.

It seems clear that this 1971 supplement was a legislative response to *Ringlieb* which, as noted, held that the State had preempted the field of solid waste management and that local government had no regulatory power in that area. More specifically, the supplement provides that nothing in the Solid Waste Management Act shall preclude the right of local government "to adopt health or environmental protec-

tion ordinances or regulations more stringent than this act or any rules or regulations promulgated pursuant thereto."

However, the Legislature did not indicate what it meant by "health or environmental protection." In a sense, any sanitary landfill ordinance or regulation, by definition, would relate to health or environmental protection. Certainly the Legislature did not intend to give local government *carte blanche* to manage landfill operations within its geographical boundaries.

In his brief, the Attorney General suggests that the Legislature was not turning away from the concept of State control over solid waste management, but rather merely intended to reaffirm authority in local government to impose measures protective of health and environment "more stringent" than State regulations regarding such immediate health and environmental matters as fencing, cover, dust control and the like.

On the other hand, the Township argues that by the enactment of the supplement in question the Legislature has reserved to local government the right, *inter alia,* to say what may or may not be dumped in a sanitary landfill within its borders.

We do not agree with the Township's position. The legislative reaffirmation of some limited local authority over landfill operations would not sanction an ordinance provision or regulation which is in direct conflict with the overall legislative plan. This is the fatal weakness in Section 5(e). Aside from the troublesome question whether attempting to regulate what may or may not be deposited in the sanitary landfill falls within the permissible limits of health and environmental protection, the section is offensive to the concept of regionalization of facilities, one of the key provisions in the Solid Waste Management Act. Our conclusion is that Section 5(e) is facially invalid and must be struck down.

No statewide plan for solid waste management has been shown and we assume none exists. We have noted reports in the public press that proposed regulations have been

drafted by the Department of Environmental Protection and public hearings have been held thereon. However, it is essential that a statewide master plan be prepared forthwith and regionalization of facilities undertaken.

In 1970 the Legislature declared that a solid waste crisis existed in this State. Three and one-half years have elapsed since then and we have not yet resolved the admitted crisis.

Solution of the problem calls for a thorough reexamination of present methods of waste collection and disposal and the development of possible alternatives thereto including efficient utilization of such waste. If additional legislation is required to confer needed power and authority, prompt recommendation of legislative action should be made.

The Township has also raised the question of the right of plaintiff to challenge the legality of Section 5(e). The site in question was sold by the Township to plaintiff for use as a sanitary landfill. One of the conditions of sale was that it comply with the laws of New Jersey "and of this municipality." Section 5(e) as originally enacted was then in effect and was discussed in connection with plaintiff's purchase of the site. It is the Township's contention that plaintiff accepted the restrictions on use contained in Section 5(e) and may not now attack its legality.

This argument has no merit. The condition of sale was that plaintiff "comply with the laws * * * of this municipality;" that meant valid laws. Section 5(e) has now been struck down as invalid. It is not a part of the Township's body of law.

The judgment of the Appellate Division is hereby reversed.

*For reversal*—Acting Chief Justice JACOBS and Justices HALL, SULLIVAN, PASHMAN and CLIFFORD—5.

*For affirmance*—None.