TOWN OF BEACON FALLS ET AL. *v.* STEPHEN M. POSICK
(6357)

DUPONT, C. J., BORDEN and BIELUCH, Js.

Argued September 14—decision released October 21, 1988

*Milo J. Altschuler,* for the appellant (defendant).
*Robert F. Carter,* for the appellees (plaintiffs).

BIELUCH, J. The town of Beacon Falls and its zoning and planning commission brought this action against the defendant landowner seeking a penalty under a town ordinance, and an injunction under its zoning regulations and the general statutes because of his operation of a bulky waste disposal area[1] pursuant to

---

[1] "Bulky waste means landclearing, demolition or other non-putrescible wastes. The term bulky waste includes, but is not necessarily limited to,

a permit issued by the department of environmental protection (DEP). The defendant has appealed from the judgment of the trial court in favor of the plaintiffs. We find error.

The plaintiffs' revised complaint contains two counts. For the purposes of this opinion, we need only to summarize the material factual allegations. The defendant owns and operates a dumping ground for demolition and other waste materials, also known as a bulky waste disposal area (hereinafter dump), on property at 460 Lopus Road. Such a dump is prohibited by the following ordinance adopted at a town meeting on March 16, 1954: "Section 1. No garbage, rubbish, waste material, refuse or tin cans shall be dumped within the limits of the Town. Section 2. No dumps or commercial piggeries shall be permitted within said Town limits, with the exception that the Town of Beacon Falls shall be permitted to maintain one dump at all times within the Town Limits for its purpose. Section 3. This ordinance shall not affect any existing dumps or piggeries at the present time. Section 4. This Ordinance shall become effective thirty days from the date hereof. Any person who shall wilfully violate any provision of this Ordinance shall pay a penalty not to exceed $25.00 for each and every offense. All sums paid as penalties shall be retained by the Town for its use." Dumps, other than one maintained by the town, are not an authorized use of property. They are prohibited under the provisions of the zoning regulations.

The second count adds the following allegations to those of the previous count: On June 9, 1982, the zoning enforcement officer served upon the defendant an order

the following: tires, rubble and stumps, and white goods." Regs., Conn. State Agencies § 19-524-2 (b) (13), effective January 4, 1978; see also Regs., Conn. State Agencies § 22a-209-1, effective February 21, 1985 (" 'Bulky waste' means landclearing debris and waste resulting directly from demolition activities other than clean fill").

to discontinue the use of his land as a dump in violation of the town ordinance and zoning regulations and of General Statutes (Rev. to 1981) § 19-524b (c), recodified as General Statutes (Rev. to 1983) § 22a-208 (c).[2] The defendant's dump is a solid waste facility within the meaning of § 22a-208 (c).[3] The defendant did not appeal to the zoning board of appeals from the order of discontinuance.

The plaintiffs sought the following in their claims for relief: Temporary and permanent injunctions together

---

[2] General Statutes (Rev. to 1983) § 22a-208 (c), formerly General Statutes (Rev. to 1981) § 19-524b (c), provided: "No solid waste facility shall be built, established or altered after July 1, 1971, until the plan and design and method of operation of the same have been filed with the department [of environmental protection] and approved by the commissioner [of environmental protection] by the issuance of a permit, provided, nothing in this chapter or in chapter 446e shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal."

[3] The following statutory definitions are relevant to this opinion: "[General Statutes (Rev. to 1983)] Sec. 22a-207. (Formerly Sec. 19-524a). Definitions. For the purposes of this chapter and chapter 103b:

\* \* \*

"(3) 'Solid waste' means unwanted or discarded materials, including solid, liquid, semisolid or contained gaseous material;

"(4) 'Solid waste facility' means any solid waste disposal area, volume reduction plant or resource recovery facility operated by any municipal or regional authority or any person if such area, plant or facility handles more than five tons a year of solid waste;

\* \* \*

"(6) 'Solid waste disposal area' means the location utilized for ultimate disposal of wastes as approved by the department;

\* \* \*

"(9) 'Municipality' means any town, city or borough within the state."

Regs., Conn. State Agencies § 19-524-4 (b) provides: "APPLICATION FOR PERMITS. (1) Any person, municipal authority or regional authority that builds, establishes or alters a solid waste facility after July 1, 1971, must obtain a permit pursuant to Sections 19-524 (b) and 25-54 (i), Connecticut General Statutes, unless excluded by Section 19-524-4 (a) of these regulations."

with costs and reasonable attorney's fees under General Statutes § 8-12, and an award of $25 per day of each day of operation of the dump under the antidumping ordinance of March 16, 1954.

In addition to denying the material allegations, the defendant alleged the following special defenses: (1) by its inaction, the town had waived its right to contest the permits obtained by the defendant from the DEP on July 10, 1978, and on May 5, 1982, for the operation of a bulky waste disposal area on his property; (2) the zoning enforcement officer's order is void; (3) to the extent that they conflict with the permits granted by the DEP, the town zoning regulations are preempted by the state laws and regulations under which the permits were granted; (4) the zoning regulations prohibiting the use of any property as a dump are unconstitutional; (5) the town failed to appeal from the granting of the defendant's permits by the DEP; (6) since no action was taken on the order of discontinuance served on June 9, 1982, until the commencement of suit on December 21, 1983, the action is invalid because of the violation of the defendant's constitutional rights and substantial prejudice and harm caused him by such delay; and (7) the town waived its right to contest the defendant's use of his property under the DEP permits by its prior refusal to grant a zoning hearing.

After the defendant's response to the plaintiffs' request for admissions, the plaintiffs moved for summary judgment on the ground that there was no genuine issue as to any material fact. The defendant, in turn, moved for summary judgment on the ground that there were no material facts in dispute as to the special defense of preemption. Summary judgments were denied both to the plaintiffs and to the defendant. The court, *Kulawiz, J.,* ruled that the local zoning regula-

tions were not preempted by the DEP permit and that there were numerous questions of fact to be determined by the trier.

Trial was concluded on July 18, 1986, at which time the court, *Hon. Joseph J. Chernauskas,* state trial referee, issued a temporary injunction restraining the defendant from using his property for dumping, depositing, storing or landfilling any solid waste, bulky waste or hazardous waste material and fixed a briefing schedule. Because of the defendant's failure to file a brief after receiving extensions of time, the court's memorandum of decision was delayed until August 19, 1987. The court found for the plaintiffs on the revised complaint and against the defendant on his special defenses.

The trial court made the following relevant findings with regard to the plaintiffs' complaint: (1) the defendant began a commercial dumping operation on a two acre site about 1979; (2) on June 9, 1982, the defendant was served with an order from the zoning enforcement officer to discontinue the use of his land as a dump in violation of the ordinances and zoning regulations; (3) the defendant failed to appeal that order; (4) the defendant thereafter dumped, or permitted to be dumped, 100,000 cubic yards of waste material on a six acre site; (5) the dumping of garbage, rubbish and waste material in the town is prohibited by the ordinance passed on March 16, 1954, which provides for "a penalty not to exceed $25.00 for each and every offense"; (6) on July 19, 1978, the defendant obtained a bulky waste disposal area permit for his property from the DEP, and another permit on May 21, 1982; (7) "[t]his 1982 DEP permit was *expressly contingent on compliance with local laws and regulations*" (emphasis in original); (8) the DEP permit process did not include any investigation of whether the dumping operation complied with town ordinances or zoning regulations; and (9) the defendant wilfully continued

his dumping operation in violation of General Statutes § 8-12[4] after receipt of the cease and desist order.

Addressing the defendant's special defenses, the court found for the plaintiffs on each of the affirmative claims. The court made these relevant findings: (1) the

---

[4] "[General Statutes (Rev. to 1981)] Sec. 8-12. PROCEDURE WHEN REGULATIONS ARE VIOLATED. If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer or official board or authority designated therein, who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter or, when the violation involves grading of land or the removal of earth, to issue, in writing, a cease and desist order to be effective immediately. The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists, or the lessee or tenant of an entire building or entire premises where such violation has been committed or exists, or the owner, agent, lessee or tenant of any part of the building or premises in which such violation has been committed or exists, or the agent, architect, builder, contractor or any other person who commits, takes part or assists in any such violation or who maintains any building or premises in which any such violation exists, shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or both; and the superior court shall have jurisdiction of all such offenses, subject to appeal as in other cases. Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after such service, or having been served with a cease and desist order with respect to a violation involving grading of land or removal of earth, fails to comply with such order immediately, or continues to violate any provision of the regulations made under authority of the provisions of this chapter specified in such order shall be subject to a civil penalty of five hundred dollars, payable to the treasurer of the municipality. . . ."

issue of preemption was previously decided by another court, *Kulawiz, J.*, on the cross motions for summary judgment; (2) the facts adduced at trial substantiate the pretrial holding that "[l]ocal zoning regulations have not been preempted by the DEP regulations," and that ruling "is adopted into this memorandum of decision"; (3) the defendant's failure to appeal the cease and desist order bars him from contesting it in this enforcement action; (4) the defendant's claim that the order to discontinue the violation is void and of no force or effect "is without merit"; (5) by his failure to appeal the cease and desist order, the defendant cannot now contest the validity of the regulations; (6) the town's prohibition of commercial dumps through its ordinance and regulations is clearly constitutional; (7) the plaintiffs were not obligated to intervene in the DEP permit proceedings; (8) the defendant's 1982 permit "by its own terms requires adherence to the town's ordinances and zoning regulations"; (9) the defense of prejudice or laches is without merit; and (10) the defendant is without standing to complain of the rejection of a zoning application filed by another person without a hearing.

The court denied the plaintiffs' claim for a penalty under the antidumping ordinance of 1954 of $25 per day for the period of 1499 days between the cease and desist order and the issuance of the temporary injunction.

With respect to the claim for a permanent injunction, the court found that "the allegations of the complaint [were] established by clear and convincing proof."[5] A

---

[5] Although the court concluded that the plaintiffs were entitled to a permanent injunction because they established the allegations of their complaint by clear and convincing proof, the court applied an incorrect standard. The proper burden of proof for injunctive relief is by a preponderance of the evidence. "The party seeking the injunction must prove his own case and adduce whatever proof is necessary to show the existence of the conditions or circumstances upon which he bases the right to and necessity

permanent injunction was issued, therefore, enjoining the defendant "from engaging in any private or commercial plan or scheme to dump, grind, deposit, store or landfill, or cause or permit such dumping, grinding, depositing, storing, or landfilling, any solid waste, bulky waste, or hazardous waste material, by whatever means" on his property. Finding that the defendant's violations were wilful, the court, at the request of the plaintiffs, ordered the payment of a civil penalty of $500 under General Statutes § 8-12. In addition, the court allowed costs and reasonable attorney's fees.

The defendant's first three claims of error are interrelated. These claims are: (1) the trial court erred in denying the defendant's motion to dismiss because it had no jurisdiction on any issue concerning the DEP permits; (2) the DEP regulations and permits preempt local zoning regulations that conflict with them relative to solid and bulky waste disposal; and (3) the absolute prohibition by the plaintiff town of the use of land as a solid or bulky waste disposal area is not a valid exercise of its police power and is not supported by any rational reason. These three claims encompass the single issue of whether the provisions of the state Solid Waste Management Act, General Statutes (Rev. to 1981) §§ 19-524a through 19-524o,[6] under which the defendant obtained a permit for the operation of a bulky waste disposal area, preempt the town's antidumping ordinance and zoning regulations prohibiting the establishment of a private dump for waste material and refuse within its limits.

On March 16, 1954, the town adopted a local ordinance "pertaining to garbage, offal and dumping." This ordinance is still in effect and its provisions are recited

for injunctive relief, and he must establish his right thereto by a preponderance of the evidence." 42 Am. Jur. 2d, Injunctions § 287.

[6] Now General Statutes §§ 22a-207 through 22a-221.

in the first count of the plaintiffs' revised complaint. This ordinance was enacted under the authority of General Statutes (1949 Rev.) § 623, which provided: "Any town may make ordinances concerning matters not regulated by statute, which ordinances may provide for the imposition of a *fine* not exceeding twenty-five dollars for any violation thereof."[7] (Emphasis added.)

The town zoning regulations prohibit private dumps. These regulations are permissive in nature. Only uses affirmatively listed are allowed. Section 6.4 states that "[a]ny use not specified as permitted in the district is prohibited." Under such regulations no use is permissible within a given zone unless it is expressly authorized. *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 481, 226 A.2d 506 (1967). The only authorization for a solid or bulky waste landfill area, is limited in the zoning regulations to one maintained by the town. Section 21.2 permits "[a] dump operated by the Town of Beacon Falls" as a special exception use in residence districts, and sequentially in the less restrictive business and industrial zones. The "performance standards" of the zoning regulations provide in § 61.7 that "[n]o refuse or other waste materials shall be dumped on any lot except with the approval of the Director of Health of the Town of Beacon Falls."

Prior to 1971, the regulation of solid waste disposal was left to municipalities. Under the terms of General Statutes (1971 Sup.) § 7-148, municipalities were empowered to "make ordinances . . . to regulate the

---

[7] By amendment and recodification, this statute is now General Statutes § 7-148 (c) (10) (A) and provides: "Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the constitution and general statutes: . . . (10) *Miscellaneous.* (A) Make all lawful regulations and ordinances in furtherance of any general powers as enumerated in this section, and prescribe penalties for the violation of the same not to exceed one hundred dollars, unless otherwise specifically provided by the general statutes . . . ."

disposal of garbage, rubbish or waste material." In 1971, the legislature adopted the Solid Waste Management Act, Public Acts 1971, No. 845, effective July 1, 1971. Section 2 (c) of the act provided: "No solid waste facility shall be built, established or altered after the effective date of this act until the plan and design and method of operation of the same have been filed with the department [of health] and approved by the commissioner [of health] by the issuance of a permit." For the purposes of this act, Public Acts, Spec. Sess., June, 1971, No. 1, § 5, substituted the department of environmental protection for the department of health, and the commissioner of environmental protection for the commissioner of health. This section was codified as General Statutes (Rev. to 1981) § 19-524b (c), and recodified as General Statutes (Rev. to 1983) § 22a-208 (c).

Section 1 (d) of the Solid Waste Management Act defined a "solid waste facility" to mean "any solid waste disposal area or volume reduction plant operated by any municipal or regional authority or any person engaged in the owning or operating of such a facility as a business . . . ."

The first judicial interpretation of the relationship between a solid waste facility established under the authority of this act and municipal zoning prohibitions was made in *Colchester* v. *Reduction Associates, Inc.,* 34 Conn. Sup. 177, 382 A.2d 1333 (1977). In *Colchester,* a sanitary landfill area was allowed by the town zoning regulations as a special exception. By definition, a sanitary landfill area could "consist only of bulky waste and high density baled refuse." The DEP granted a permit for the establishment and operation of a disposal area for baled waste in 1975, and, in 1977, the defendant obtained a modification of the original permit to allow the disposal of unbaled waste. The town then sought to enjoin the use of the area under the modified permit as a violation of the zoning regulations.

Its request for a temporary injunction was denied. The court held that the statewide solid waste management program, administered by the commissioner of environmental protection, prevailed over any conflicting local ordinance. Id., 180–82. Concluding that the state DEP permit preempted the Colchester zoning ordinance, the court stated: "Thus, while towns may regulate the use of land within their borders under § 8-2 of the General Statutes, and while they must provide for safe and sanitary disposal of all solid wastes which are generated within their borders under § 19-524n, they must not enact any ordinances or regulations which are in conflict with the state statutes and regulations promulgated thereunder." Id., 184–85.

The legislature thereafter amended the provisions of General Statutes (Rev. to 1977) § 19-524b (c), authorizing the commissioner of environmental protection to issue a permit for a solid waste facility, by adding this proviso: "provided, nothing in this chapter or in chapter 361b shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal." Public Acts 1978, No. 78-67. This amendment was effective on passage, April 27, 1978. The purpose of this amendment was "to provide that a DEP solid waste disposal permit did not override local zoning." *Shelton* v. *Commissioner,* 193 Conn. 506, 517, 479 A.2d 208 (1984).

On May 10, 1978, the defendant filed an application with the DEP to establish and operate a bulky waste[8] disposal area on two acres of his property in Beacon Falls. The plaintiff town took no action with respect to this application, and the permit was granted on July 19, 1978. In accordance with the application and definition of bulky waste under the DEP regulations; Regs., Conn. State Agencies § 19-524-2 (b) (13), effec-

---

[8] See footnote 1, supra.

tive January 4, 1978; the permit was "strictly limited to brush, wood and demolition wastes." The method and conditions for operation of the landfill were specified.

The plaintiffs took no action with respect to the defendant's application for a bulky waste disposal area permit nor with respect to the order of the DEP granting it. Section 19-524-11 (a) of the Regulations of Connecticut State Agencies provided that "[a]ny person considering himself aggrieved by order of the Commissioner issued pursuant to Section 19-524b, Connecticut General Statutes, may file a written answer and request a hearing . . . ." Subsection (b) of this regulation provided that any such hearing would be considered a contested case and subject to the requirements of the Uniform Administrative Procedure Act, General Statutes §§ 4-166 through 4-189.

The original two acre bulky waste disposal area has been filled and covered in accordance with the conditions of its permit. The operation of the area, like its authorization and establishment, went unchallenged. On December 17, 1981, however, the defendant filed an application with the DEP for a six acre expansion to the original bulky waste disposal area. This time the town's first selectman responded to the DEP by letter dated February 9, 1982. The town did not express opposition to the merits of the application, but enclosed a copy of the antidumping ordinance of 1954 and advised that such a bulky waste disposal area was prohibited by both the ordinance and the zoning regulations. In addition, a copy of § 19-524b (c), as amended by Public Acts 1978, No. 78-67, was forwarded to support the town's claim that a permit from the DEP under that provision did not "limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal."

On May 21, 1982, the DEP granted the defendant's application for a six acre expansion of his bulky waste disposal area. This permit was made expressly subject to "any federal, state or local laws or regulations pertinent to the property or activity affected thereby." The town zoning enforcement officer thereafter, on June 9, 1982, served an "order to discontinue violation" upon the defendant. The order was issued pursuant to General Statutes § 8-12 and alleged that the defendant was operating an unauthorized, improper and illegal dump in violation of § 6.4 of the zoning regulations, the antidumping ordinance and § 19-524 (sic) of the General Statutes. On December 21, 1983, the plaintiffs brought this two-fold action seeking to collect a penalty under the antidumping ordinance of 1954 and to obtain an injunction under the zoning regulations and General Statutes.

The decision in *Shelton* v. *Commissioner,* supra, followed the commencement of this action and is decisive of the issue now before the court. There, the city of Shelton brought three separate actions aimed at preventing the Connecticut resources recovery authority (CRRA) from implementing its plan to operate a forty-two acre regional landfill in Shelton on a site where a smaller private landfill previously had been operated. In one of those cases, the city sought a declaratory judgment that its local zoning regulations prevented the CRRA from expanding the landfill, notwithstanding the granting of a permit by the DEP. The trial court ruled in favor of the city and the commissioner of environmental protection appealed.

While the appeal was pending, the legislature passed Public Acts 1984, No. 84-331, directed at the specific issue awaiting review. Section 2 of the new law provided that "[n]otwithstanding the provisions of subsection (c) of section 22a-208 of the general statutes . . . concerning the right of any local body to regulate,

through zoning, land usage for solid waste disposal and section 22a-276 of the general statutes [for written consent of the municipal authority], the Connecticut resources recovery authority may use and operate as a solid waste disposal area, pursuant to a permit issued [by the DEP] under section 22a-208 of the general statutes . . . any real property owned by said authority on or before the effective date of this act, any portion of which has been operated as a solid waste disposal area . . . ." In light of this enactment, the Supreme Court ordered the trial court judgment vacated. The court, however, rendered a full opinion reviewing the applicability of prohibitory zoning regulations to DEP permits for solid waste facilities.

The city of Shelton had argued that although § 2 of Public Acts 1984, No. 84-331, empowered the CRRA to operate a landfill, "[n]otwithstanding the provisions of subsection (c) of section 22a-208 of the general statutes . . . concerning the right of any local body to regulate, through zoning, land usage for solid waste disposal," the act does not abrogate the city's general zoning power pursuant to General Statutes § 8-2. The court's answer to this claim is equally applicable to the question now before us: "Section 8-2 cannot support the exclusion of the proposed landfill by zoning, however, because *in the absence of § 22a-208 (c), statewide regulation of solid waste disposal activities had preempted Shelton's exclusionary zoning regulations.*" (Emphasis added.) Id., 515–16. The law of the case is that the legislature had enacted a comprehensive statewide solid waste management plan that would prevail in the event any conflicting local zoning ordinance or regulation were later enacted pursuant to the limited authority of General Statutes § 22a-208 (c). The state Solid Waste Management Act preempted existing and future conflicting municipal zoning regulations. We are bound to apply this statement of the law to the matter before us.

In reaching its decision, the court found it "useful first to consider the origin of § 22a-208 (c)." Id., 516. After noting the ruling in *Colchester* v. *Reduction Associates, Inc.*, supra, 184–85, that "the zoning regulations of the town of Colchester could not prohibit the disposal of unbaled waste within the town when the DEP had issued a permit approving the defendant's disposal activities because state law had preempted the local regulations"; *Shelton* v. *Commissioner*, supra, 516; the court found that the legislature amended § 22a-208 (c) in response to the holding in *Colchester* to provide that a DEP solid waste disposal permit did not override local zoning. "The effect of § 2 of the 1984 act is to eliminate the express zoning authority conferred by § 22a-208 (c) and to restore the law to its state at the time of the *Colchester* decision. We agree with the court in *Colchester* that the general zoning authority conferred by § 8-2 does not extend to the enactment of zoning regulations that conflict with a DEP permit." *Shelton* v. *Commissioner*, supra, 517. The Supreme Court's decision on the preemption of local ordinances and zoning regulations by the state statutes that "address the growing statewide problems of solid waste disposal"; id.; is binding on this court.[9] Neither the court's decision on the defendant's motion for summary judgment nor its memorandum of decision cited or distinguished the conclusion of the Supreme Court in *Shelton*, "that the general zoning authority conferred by § 8-2 does

---

[9] The defendant in his appellate brief states that "[b]oth the plaintiff[s] and the trial court ignored the ruling of the Supreme Court in *Shelton* v. *Commissioner*, 193 Conn. 506, 517, [479 A.2d 208] (1984), wherein [the] court stated that it agreed with the decision in *Colchester* v. *Reduction Associates*, 34 Conn. Sup. 177 [382 A.2d 1333] (1977)."

The defendant did not cite *Shelton* as a precedent to the trial court when he failed to file a posttrial brief notwithstanding that numerous extensions of time were granted to him in the period of thirteen months that elapsed between the conclusion of the trial and the filing of the court's memorandum of decision.

not extend to the enactment of zoning regulations that conflict with a DEP permit."[10] Id., 517.

The conclusion of the court in *Shelton,* that the Solid Waste Management Act preempts local zoning regulations, comports with the holdings in other jurisdictions. In *Southern Ocean Landfill, Inc.* v. *Mayor & Council of the Township of Ocean,* 64 N.J. 190, 314 A.2d 65 (1974), the factual situation resembled that now before the court. After the New Jersey Supreme Court ruled that the state Solid Waste Management Act had preempted the field of solid waste management and that local government had no regulatory power in that area; *Ringlieb* v. *Township of Parsippany-Troy Hills,* 59 N.J. 348, 283 A.2d 97 (1971); the legislature enacted an amendment providing that nothing in the act shall preclude the right of local government to adopt health or environmental protection ordinances or regulations more stringent than this act or any rules or regulations promulgated pursuant thereto. In finding this supplemental legislation facially invalid, the court stated: *"The legislative reaffirmation of some limited local*

[10] After *Shelton* v. *Commissioner,* 193 Conn. 506, 479 A.2d 208 (1984), the legislature made two additional amendments to the Solid Waste Management Act that are not before us today. We note them, however, because they show a further legislative interest to override the *Shelton* holding. Public Acts 1984, No. 84-535, § 5, effective October 1, 1984, added the following requirement to the permit provisions of § 22a-208 (c): "The commissioner shall send a written notification of any application for a permit to the chief elected official of each municipality in which the proposed facility is to be located within five business days of the date on which any such application is filed."

General Statutes § 22a-208b was originally enacted as Public Acts 1985, No. 85-334, § 6, effective June 16, 1985. That legislation provides: "The commissioner of environmental protection may issue a permit to construct a solid waste facility pursuant to section 22a-208 of the general statutes, provided the applicant submits to the commissioner a copy of a valid certificate of zoning approval, special permit, special exception or variance, or other documentation, establishing that the facility complies with the zoning requirements adopted by the municipality in which such facility is located pursuant to chapter 124 of the general statutes or any special act."

*authority over landfill operations would not sanction an ordinance provision or regulation which is in direct conflict with the overall legislative plan. . . . [T]he section is offensive to the concept of regionalization of facilities, one of the key provisions in the Solid Waste Management Act."* (Emphasis added.) *Southern Ocean Landfill, Inc.* v. *Mayor & Council of the Township of Ocean,* supra, 195.

The statement of the law by the New Jersey Supreme Court in *Southern Ocean Landfill* is identical to the rule of law established by our Supreme Court in *Shelton.* It reflects a proper regard for the authority of the statewide solid waste management plan and the privity of its policy over local intrusions contrary to its purpose and undermining its environmental importance.

In *Little Falls Township* v. *Bardin,* 173 N.J. Super. 397, 414 A.2d 559 (1979), the Appellate Division of the Superior Court of New Jersey denied the township's claim that municipalities have zoning jurisdiction over solid waste facilities pursuant to the municipal land use law because the solid waste management act preempted all local regulation in the field of solid waste disposal including zoning. The court concluded its analysis stating: "The regional emphasis could not be clearer. Local regulation is preempted. Even if a municipality could properly enact a zoning ordinance concerning solid waste disposal, it can not exercise its zoning power so as to collide with expressed policy goals of State legislation. The ordinance in question, by completely prohibiting sanitary landfills, quite obviously frustrates the objectives of the Solid Waste Management Act." Id., 418.

The *Little Falls Township* case involved an ordinance that specifically prohibited landfills and was found to be in direct conflict with the state law on solid waste disposal. In *Chester Township* v. *Environmental Pro-*

*tection Department,* 181 N.J. Super. 445, 438 A.2d 334 (1981), the township appealed from a decision of the department of environmental protection granting approval to a landfill operator to construct an access road to its sanitary landfill in the township. The township contended that the provisions of its zoning ordinances requiring site plan approval and an environmental impact statement were "interstitial" interests not preempted by the Solid Waste Management Act. The appellate court concluded otherwise, holding that "enforcement of the provisions of the township ordinance requiring site plan approval and compliance with environmental standards would duplicate state regulations and thus may serve to frustrate the purposes of the Solid Waste Management Act." Id., 452.

Under the circumstances of this case, we also find an alternative ground for error in the judgment of the trial court. Notwithstanding our finding of preemption of the zoning ordinance by the Solid Waste Management Act, we agree with the claim of the defendant that the town's absolute prohibition of the use of all land as a solid or bulky waste disposal area is not supported by any rational reason and is not a valid exercise of its police power.[11] No reasonable explanation for the arbitrary prohibition of landfill areas in the town has been given or suggested. "Zoning legislation has been upheld with substantial uniformity as a legitimate subject for the exercise of the police power when it has a rational relation to the public health, safety, welfare and prosperity of the community and is not in plain violation of constitutional provision, or is not such an unreasonable exercise of this power as to become arbitrary, destruc-

---

[11] The defendant's claim that the absolute prohibition against the use of land in the town of Beacon Falls for dumping and for solid or bulky waste disposal areas is not a lawful exercise of its police power to adopt zoning regulations pursuant to General Statutes § 8-2 does not attack the validity of the antidumping ordinance of March 16, 1954.

tive or confiscatory." *State* v. *Hillman,* 110 Conn. 92, 100, 147 A. 294 (1929). "The power of regulation by government is not unlimited; it cannot, as we have stated, be imposed unless it bears a rational relation to the subjects which fall fairly within the police power and unless the means used are not within constitutional inhibitions. The means used will fall within these inhibitions whenever they are destructive, confiscatory, or so unreasonable as to be arbitrary. *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 47 Sup. Ct. 114, [71 L. Ed. 303 (1926)]." *State* v. *Hillman,* supra, 105.

The statute authorizing zoning "regulations," General Statutes § 8-2, speaks of the power of a municipality "to regulate" and not of the power to prohibit. The word "regulate" has been defined as " ' "to prescribe the rule by which commerce is to be governed." ' " *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 20, 523 A.2d 467 (1987), quoting *United States* v. *Darby,* 312 U.S. 100, 113, 61 S. Ct. 451, 85 L. Ed. 609 (1941). The power to regulate, however, entails a certain degree of prohibition. It infers limitations. It may in many instances result in prohibition. "The question is whether the result is reached in a reasonable manner and is necessary for the public welfare." *Blue Sky Bar, Inc.* v. *Stratford,* supra.

"It is fair to say that the power to regulate, however, does not necessarily imply the power to prohibit absolutely any business or trade, as the very essence of regulation, which infers limitations, is the continued existence of that which is regulated. Prohibition of an incident to or particular method of carrying on a business is not prohibition, but rather it is merely 'regulation.' " Id., 20–21. In this case, the zoning ordinance does not merely prohibit an incident to or particular method of carrying on the private business of operating a solid waste disposal area. It prohibits that busi-

ness entirely. Thus, it is prohibition, not regulation, and it goes beyond the power conferred by General Statutes § 8-2.

*Yaworski* v. *Canterbury,* 21 Conn. Sup. 347, 154 A.2d 758 (1959), was an action for a declaratory judgment to determine the validity of an ordinance of the town of Canterbury that prohibited the transportation of garbage, offal, rubbish, or waste material into the town, and allowed a penalty for its violation. It further elucidates the distinction between prohibitory and regulatory ordinances. Under General Statutes (1958 Rev.) § 7-148, the town was authorized "to regulate the disposal of garbage, rubbish or waste material." The court concluded that the ordinance was too broad, in excess of the powers granted to the town, and therefore void. *Yaworski* v. *Canterbury,* supra, 352. Its reasoning is applicable to the facts before us and supports the defendant's claim that the Beacon Falls zoning regulations prohibiting private landfill areas are invalid. "The exercise of police powers by towns and cities proceeds under legislative sanction for the protection of the public health and comfort to enact regulations that are reasonable, necessary and appropriate. . . . Ordinances relating to garbage collection and disposal must be reasonable and not arbitrary or oppressive. 7 McQuillin, Municipal Corporations (3d Ed.) § 24.245." *Yaworski* v. *Canterbury,* supra, 350.

" 'Regulate' and 'prohibit' are not synonymous terms, but have different meanings. To regulate a business implies that the business may be engaged in or carried on subject to established rules or methods, while to prohibit is to prevent the business from being engaged in or carried on entirely or partially." Id. The Canterbury ordinance, like the Beacon Falls zoning regulations before us, prohibited activity in a field in which the legislature had exercised its own power of regulation by enacting a general law affecting all towns

and cities of the state governing the transportation of garbage to another town for treatment, or through any town for disposal outside the state. General Statutes (1958 Rev.) §§ 7-161, 7-162. By enacting these statutes, the legislature has limited the powers of all towns to regulate the subject matter, and the ordinance was in conflict with them. Id., 351.

In *Lakeside Realty Co.* v. *Berlin*, 20 Conn. Sup. 188, 129 A.2d 628 (1956), the court enjoined the town of Berlin and its zoning commission from enforcing an ordinance prohibiting the construction, maintenance or operation of an outdoor or drive-in theater in the town, and rendered a judgment declaring it to be void. The court found the ordinance to be unreasonable, arbitrary and without a firm basis in, or relation to, the public health, morals, safety or public welfare. Id., 193. "The town or municipality does not have the absolute power to restrict a lawful business from its boundaries. It must avoid an arbitrary, unreasonable and discretionary exercise of such power." Id., 191. "The evidence fail[ed] to demonstrate that the drastic curtailment imposed [was] warranted." Id., 192. These reasons are germane to the case before us and support the defendant's claim of the invalidity of the Beacon Falls zoning regulations prohibiting landfill areas.

The final claim of error raised by the defendant is that the trial court erred in ruling that he could not contest the validity of the cease and desist order, because an appeal from said order would have been futile since the zoning board of appeals would not, and could not, find that its own regulations were invalid. We agree.

The general rule is that a party must exhaust his administrative remedies before appealing to a court of law. *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556, 529 A.2d 666 (1987); *Planning & Zoning Commission* v. *Craft,* 12 Conn. App. 90, 94, 529

A.2d 1328, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987). The rationale for this doctrine is sound: "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* [173 Conn. 352, 358–59, 377 A.2d 1099 (1977)]." *Concerned Citizens of Sterling* v. *Sterling,* supra, 557. Further, "where a statutory right of appeal from an administrative decision exists, an aggrieved party may not bypass the statutory procedure and instead bring an independent action 'to test the very issue which the appeal was designed to test.' " *LaCroix* v. *Board of Education,* 199 Conn. 70, 78, 505 A.2d 1233 (1986), quoting *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979). This characterization of the law signals the logic in the defendant's argument: The appeal process could only reevaluate the propriety of the cease and desist order when measured against the town zoning ordinance. Therefore, the appeal would not have "tested" the very issue the defendant wished to address, namely, the validity of the prohibitory zoning regulations.

"Like any other general rule, the rule of exhaustion of administrative remedies is subject to some exceptions, although we have recognized such exceptions only infrequently and only for narrowly defined purposes." *LaCroix* v. *Board of Education,* supra, 79. An exception occurs when the zoning board of appeals cannot offer the party seeking review an available avenue for relief, or when the remedy would be inadequate. *Conto* v. *Zoning Commission,* 186 Conn. 106, 114–15, 439 A.2d 441 (1982). This exception addresses the issue raised by the defendant here—the validity of the zoning regulation under which the zoning enforcement officer alleged a violation. The claim is reviewable by a

court of law, and the party may bypass a futile appeal to the zoning board of appeals. See *Cummings* v. *Tripp,* 204 Conn. 67, 74–81, 527 A.2d 230 (1987); *Friedson* v. *Westport,* 181 Conn. 230, 233, 435 A.2d 17 (1980).

The trial court recognized that the exhaustion of administrative remedies here by an appeal from the order to discontinue the violation would have been unfeasible when it stated: "Actually, the [second special] defense [that the order to discontinue violation is void] is without merit. The defendant was served with the cease and desist order, and he acknowledged that he operated the dump." Upon an appeal to the zoning board of appeals from a decision of the zoning enforcement officer the "board may reverse or affirm wholly or partly or may modify any order, requirement or decision appealed from and shall make such order, requirement or decision as in its opinion should be made in the premises and shall have all the powers of the officer from whom the appeal has been taken but only in accordance with the provisions of this section." General Statutes (Rev. to 1981) § 8-7. The board's jurisdiction under § 8-7 was limited to a consideration of the existence of the alleged violation, and did not extend to a determination of the legality of any zoning regulation upon which the alleged violation was predicated. The zoning board of appeals is empowered in an appeal to it from an order of the zoning enforcement officer "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ." General Statutes (Rev. to 1981) § 8-6 (1). We therefore conclude that the defendant in this case did not have to exhaust his administrative remedies in order to contest the validity of the order to discontinue violation.

Although not raised by the defendant at trial, we note, pursuant to Practice Book § 4185, a matter of some importance. In their revised complaint the plaintiffs alleged that the defendant violated the antidumping ordinance of March 16, 1954, for which the town sought a monetary award of "twenty-five dollars per day for each day of operation of said dump, pursuant to ordinance of the Town of Beacon Falls, set forth in paragraph 2 of this revised complaint." At trial, the town claimed this "penalty" from the issuance of the cease and desist order to the entry of the temporary injunction on July 18, 1986, or a period of 1499 days, for a total of $37,475. In its memorandum of decision, the court found "it is entirely appropriate to enforce the ordinance against the defendant, but the quantum of evidence and offer of proof to support this suggestion with clear and explicit specifics—monetarily—is lacking, and the court cannot engage in surmise, speculation and conjecture in *formulating* the penalty amount under the circumstances existing and peculiar to this particular matter." (Emphasis in original.)

Both the plaintiffs in their revised complaint and the court in its memorandum of decision failed to recognize that the antidumping ordinance of 1954 is a criminal ordinance requiring criminal prosecution, and authorizing a sentence of a fine or penalty upon conviction after proving the violation beyond a reasonable doubt. This ordinance was enacted under the authority of General Statutes (1949 Rev.) § 623, which provided: "Any town may make ordinances concerning matters not regulated by statute, which ordinances may provide for the imposition of a *fine* not exceeding twenty-five dollars for any violation thereof."[12] (Emphasis added.) That statute empowered municipalities to enact ordinances exacting the specified fine for their violation. See *Yaworski*

---

[12] See footnote 7, supra.

v. *Canterbury,* supra, 347–49. Neither this enabling statute nor the antidumping ordinance adopted by town meeting on March 16, 1954, pursuant to it, authorized the town to collect *civil* penalties for its violation.[13] "It is well settled that towns, like other municipalities, can exercise no powers except such as have been expressly granted to them or by fair implication conferred upon them by the state." Id., 349.

The trial court erred in finding that "it is entirely appropriate to enforce the [1954 antidumping] ordinance against the defendant." This error, however, was harmless in the circumstances since the court could not "engage in surmise, speculation and conjecture in *formulating* the penalty amount under the circumstances existing and peculiar to this particular matter," (emphasis in original),[14] and did not order the payment of a "civil" penalty it had no authority to assess.

---

[13] " 'The term "penalty" in its broadest sense includes all punishment of whatever kind . . . . A fine is always a penalty, but a penalty may not always be a fine. . . . A fine is a "pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor. . . ." ' " (Citations omitted.) *U.S. Vision, Inc.* v. *Board of Examiners for Opticians,* 15 Conn. App. 205, 220, 545 A.2d 565 (1988) (*Bieluch, J.,* concurring and dissenting).

[14] The plaintiffs properly did not seek an injunction to enforce this penal ordinance. See 7 E. McQuillin, Municipal Corporations (3d Ed. Rev.) § 24.255 (under the rule that ordinarily injunctive relief "may not be had to aid the enforcement of a penal ordinance, an injunction is not available to enforce the regulation of a board of health making it a criminal offense to transport garbage without a permit, unless independent grounds for equitable jurisdiction, such as irreparable injury and inadequacy of legal remedy or the fact of public nuisance, exist"); see also *Malden* v. *Flynn,* 318 Mass. 276, 282, 61 N.E.2d 107 (1945) (where the defendant violates a criminal statute which does not, in addition to a penalty, provide for any remedy in equity for the enforcement of its provisions, there is nothing to take the case out of the general rule that it is outside the ordinary equity jurisdiction to enforce criminal statutes by injunctions); and *Commonwealth* v. *Stratton Finance Co.,* 310 Mass. 469, 472, 38 N.E.2d 640 (plain object of suit is to enforce a criminal statute by injunction and no citation of cases is needed to demonstrate that this lies outside the ordinary course of equity jurisdiction with which we are familiar).

The plaintiffs have stated three alternative grounds upon which the judgment below may be affirmed and this appeal dismissed. We disagree with these claims.

The first ground states that "[t]he failure of the defendant to comply with the order of the trial court under [Practice Book] § 285A[15] bars the defendant's raising of issues of law on appeal." As noted at the outset of the court's memorandum of decision filed on August 19, 1987, "[t]he defendant was to submit his brief by August 7, 1986; he has not done so to this date of writing, although numerous extensions for submitting his brief had been requested and granted by the court."

The record does not disclose that the plaintiffs made any motion to the trial court complaining of this failure by the defendant or addressing such default and requesting an appropriate sanction by the court under the rule. The plaintiffs' claim, now raised on appeal, properly belonged in the trial court before it rendered judgment. The finality of the court's judgment closed the book on procedural questions not raised before its rendition. The trial court, in the exercise of its reasonable discretion, took no action suo motu under this rule of practice. It chose only to acknowledge publicly, in its memorandum of decision, that the court's judgment had been delayed by the defendant's default in submitting a brief.

---

[15] Practice Book § 285A provides: "The parties may, as of right, or shall, if the court so orders, file, at such time as the court shall determine, written trial briefs discussing the issues in the case and the factual or legal basis upon which they ought to be resolved.

"If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim."

Additionally, nothing more than this bare statement of the plaintiffs' claim and of the rule of practice appears in their brief. There is no citation to legal authority. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 149, 448 A.2d 829 (1982); *Echols* v. *Balck,* 9 Conn. App. 620, 622, 520 A.2d 651 (1987); *State* v. *Chauvin,* 8 Conn. App. 307, 311, 512 A.2d 969 (1986); *State* v. *Knighton,* 7 Conn. App. 223, 226, 508 A.2d 772 (1986).

We also decline to review the second alternative ground, which states that the failure of the defendant to state any claim of law distinctly to the trial court, in his oral argument or in a written trial brief, bars the defendant from raising issues of law on appeal. The plaintiffs have not briefed this issue. Therefore, this claim evades meaningful appellate review because counsel has not researched the issue or formulated any legal arguments thereunder. *Echols* v. *Balck,* supra; *In re Juvenile Appeal (85-3),* 3 Conn. App. 194, 197, 485 A.2d 1369, cert. denied, 196 Conn. 801, 491 A.2d 1105 (1985); see also *Karanian* v. *Maulucci,* 185 Conn. 320, 321–22, 440 A.2d 959 (1981).

The third alternative claim, that the failure of the defendant to comply with Practice Book § 4065 (e) should bar consideration of legal issues, also will not be considered. The substance of this claim is that the defendant should be barred from raising legal issues for failure to include in his brief the text of any constitutional provision, statute, ordinance or regulation upon which he relies. For this reason, the plaintiffs ask that the defendant's appeal be dismissed.

At the outset, we note that at no time did the plaintiffs move, by written motion, for such dismissal. More

importantly, nothing more than a bare statement of the plaintiffs' claim, reciting Practice Book § 4065 (e), appears in their brief. There is no legal authority cited for such sanction. We have earlier discussed more fully our reasons for declining to review an issue not properly presented to us with legal support.

The concurring opinion would dispense with, as unnecessary, three of the relevant issues. The holding in *Shelton*, which we find binding on this court, is misconstrued. In *Shelton*, the town zoning regulations prohibited, by failing to include in the list of permitted uses, solid waste disposal facilities, sanitary landfills, and dumps. The CRRA sought a permit from the DEP for the operation of a regional landfill in *Shelton*. Pursuant to General Statutes § 4-176,[16] the city of Shelton requested a declaratory ruling from the DEP on the applicability of its zoning prohibition. The commissioner of the DEP ruled that the provisions of General Statutes § 19-524b (c) relating to zoning, coupled with the existing Shelton zoning regulations, did not prohibit the issuance of a permit to CRRA. The city thereafter sought a declaratory judgment under General Statutes § 4-175[17] on the issue of whether the provisions of

---

[16] "[General Statutes] Sec. 4-176. DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

[17] "[General Statutes] Sec. 4-175. DECLARATORY JUDGMENT ACTION TO DETERMINE VALIDITY OR APPLICABILITY OF A REGULATION OR ORDER. The validity or applicability of a regulation or order of an agency may be deter-

§ 19-524b (c) and the zoning regulations of Shelton would prevent the use of any permit granted by the DEP on the property of the CRRA. The trial court held that the zoning regulations of the city prevented the use of the permit granted by the DEP to the CRRA for a landfill. A-857 Rec. & Briefs, Position 1, Record p. 34, May Term, 1984.

While the appeal in *Shelton* was pending, 1984 Public Acts, No. 84-331 was enacted. Section 2 of that act provided that the CRRA could operate a solid waste disposal area pursuant to a permit issued by the DEP under § 22a-208 (formerly § 19-524b) notwithstanding the proviso of § 22a-208 (c) that a DEP solid waste disposal permit did not override local zoning regulations. The Supreme Court vacated the declaratory judgment of the trial court with this analysis: "The effect of § 2 of the 1984 act is to eliminate the express zoning authority conferred by § 22a-208 (c) and to restore the law to its state at the time of the *Colchester* decision. We agree with the court in *Colchester* that the general zoning authority conferred by § 8-2 does not extend to the enactment of zoning regulations that conflict with a DEP permit." *Shelton* v. *Commissioner,* supra, 517. By virtue of this decision, the Supreme Court gave retroactive effect to Public Acts 1984, No. 84-331, without explanation.

The concurring opinion also misconstrues our holding that the prohibition against dumping in the zoning

mined in an action for declaratory judgment brought in the superior court for the judicial district of Hartford-New Britain, if the regulation or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may not be rendered unless the plaintiff has requested the agency to pass upon the validity or applicability of the regulation or order in question, pursuant to section 4-176, and the agency has either so acted or has declined to exercise its discretion thereunder."

regulations was an ultra vires exercise of the police power of the town. An ordinance against dumping is not, per se, unconstitutional, and we do not so hold. The dumping prohibition under consideration, however, is unsupported by any rational reason and is an invalid extension of the town's police power. The zoning power "to regulate" under General Statutes § 8-2 does not include the power "to prohibit" unless such prohibition is supported by a rational relation to the purposes of zoning. Any proper prohibition of use under a valid zoning regulation is a valid exercise of police power. Above and beyond that, and this question is not before us, the means used for any valid exercise of police power, including "regulation" as well as "prohibition," must be exercised pursuant to constitutional limitations. "The means used will fall within these [constitutional] inhibitions whenever they are destructive, confiscatory, or so unreasonable as to be arbitrary. *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 47 Sup. Ct. 114, [71 L. Ed. 303 (1926)]." *State* v. *Hillman,* supra, 105. To that extent, the concurring opinion has misinterpreted the holding in *State* v. *Hillman,* supra, 92. Our decision is directed at the invalidity of the town's actions in light of its statutory allocation of police power under General Statutes § 8-2, and not to the constitutionality of its zoning regulations.

The concurring opinion also misconstrues to be dictum an important, relevant issue considered by the majority under Practice Book § 4185. The town sought a civil penalty of $37,475 for the alleged violation of the antidumping ordinance of March 16, 1954. The trial court found "it is entirely appropriate to enforce the ordinance against the defendant," but found insufficient proof of the amount of the penalty to be awarded under the ordinance. The fact of the purported civil enforcement of this penal ordinance is an important consideration for this court, notwithstanding the ulti-

mate reluctance of the trial court to assess any penalty. It is of concern to us that the plaintiffs and the trial court have, in this instance, misapplied a criminal ordinance in the application for a civil penalty. A criminal ordinance is enforceable only by criminal prosecution, with constitutional due process safeguards. As applied in this case, and foreseeably, in future applications of this antidumping ordinance by the town, we are concerned with "the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985); *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259 (1980); *Daley* v. *Gaitor,* 16 Conn. App. 379, 383, 547 A.2d 1375 (1988); *Smith* v. *Czescel,* 12 Conn. App. 558, 563, 533 A.2d 223 (1987). We consider the fact that, although it ruled otherwise, the trial court actually had no subject matter jurisdiction "appropriate to enforce the [antidumping] ordinance against the defendant," substantially important to the proper application of the law.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment for the defendant.

In this opinion, DUPONT, C. J., concurred.

BORDEN, J., concurring. I agree with the result reached by the majority in this case because I agree that, under the circumstances of this case, the statutory power to regulate the business of solid waste disposal through zoning did not include the power to prohibit that business. *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 523 A.2d 467 (1987). Thus, whether the town's zoning regulations are measured against General Statutes § 8-2 or against General Statutes § 22a-208 (c), to the extent that they totally prohibit

the defendant's business, they are beyond their statutory authorization. This conclusion renders it unnecessary to address three other issues that the majority decides, and with which I decline to join.

First, the majority decides that the case of *Shelton* v. *Commissioner,* 193 Conn. 506, 479 A.2d 208 (1984), is dispositive, and that therefore the town's regulations were preempted by state statutes. In *Shelton,* our Supreme Court stated that it "agree[d] with the [trial] court in *Colchester* [v. *Reduction Associates, Inc.,* 34 Conn. Sup. 177, 382 A.2d 1333 (1977)] that the general zoning authority conferred by § 8-2 does not extend to the enactment of zoning regulations *that conflict with a DEP permit."* (Emphasis added.) Id., 517. In this case, however, unlike both *Shelton* and *Colchester,* the DEP permit was made specifically subject to local zoning ordinances. It is difficult to see, therefore, how the town's zoning regulations conflict with the defendant's DEP permit. Furthermore, I do not read *Shelton,* as the majority apparently does, to say that the 1984 legislation had retroactive effect so as to govern the DEP permit in this case. Thus, the preemption question is not at all clear, and since it is unnecessary to the result in this case, I would not decide it.

Second, the majority goes on apparently to decide that, even if the zoning regulations were statutorily authorized, they are unconstitutional. The statement that the town's prohibition of solid waste disposal sites is unsupported by any rational reason and is not a valid exercise of its police power, appears to be a statement regarding the unconstitutionality of the regulations. I read it as such principally because the same passage in the majority opinion quotes *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294 (1929), where the *Hillman* court held the local ordinance in that case to be unconstitutional. The majority's decision in this case, it seems to me, contravenes the general jurisprudential princi-

ple that this court does not ordinarily decide constitutional questions when there is an adequate common law or statutory basis available for its decision.

Finally, the majority's dictum that the trial court's imposition of the financial penalty on the defendant constituted plain error is wholly unnecessary. It gratuitously finds plain error where the plain error doctrine does not apply and where the error, if any, is hardly plain. This issue was never raised by either party, in the trial court or this court, and was not briefed or argued. Application of the plain error doctrine is ordinarily reserved for situations where it is necessary to preserve confidence in the fairness and integrity of the adjudicative process, or where the issue is important to the development of the law, "is vital to the proper resolution of the case," and was sufficiently presented to the trial court. *Daley* v. *Gaitor,* 16 Conn. App. 379, 383, 547 A.2d 1375 (1988). In this case, however, we are reversing on other, unrelated grounds, and are directing that, on the remand, the trial court render judgment for the defendant. Thus, this case hardly calls for an advisory declaration of plain error on an issue which is essentially moot. Furthermore, the particular issue is sufficiently esoteric and its merits are sufficiently cloudy, that we are entitled to some briefing, at the least, before we decide it.